PEDDICORD ET AL. *v.* FRANKLIN ET AL.

[No. 25, September Term, 1973.]

*Decided November 1, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Charles O. Fisher* and *Charles O. Fisher, Jr.*, with whom were *Walsh, Fisher & Gilmore* on the brief, for appellants.

*Raymond E. Beck*, with whom were *C. Keating Bowie* and *Cable, McDaniel, Bowie & Bond* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

This appeal involves a dispute between the appellants, Charles W. Peddicord, Jr. et al., and the appellees, Betty M. Franklin and her mother, Helen Franklin, over the location of property lines as related to a county road at Gypsy Hill in the Ninth Election District of Carroll County. The public right-of-way was formerly Maryland Route No. 27. The present Route No. 27 has bypassed this section of road by circling it to the west. The disputed strip of road is now covered with gravel and runs generally from southwest to northeast. Some exhibits in the case refer to the east (southeast) side of the road so that, for convenience, we will refer to it as running north and south. The disputed portion of the road runs between the Peddicord land on the west and the Betty M. Franklin land on the east for approximately 665 feet. The southern half of this portion of road runs in front of, or to the east of, the Peddicord home lot. On the east or Franklin side of this section is a bank some five or six feet high which runs along the edge of the road for approximately 300 feet.

On March 10, 1972, Charles W. Peddicord, Jr. and his wife Anna M., Charles A. Franklin and his wife Catherine E., and Robert T. Turfle and his wife Dorothy L., for themselves and for all persons residing along the road involved, filed a bill of complaint in the Circuit Court for Carroll County against Betty M. and Helen Franklin, praying for a declaratory decree and a permanent injunction. The plaintiffs, Peddicord et al., alleged that the defendants, the Franklins, with deliberation, malice and intent to harass the plaintiffs and

others using the roadway, have, for a period of two years, interfered with the customary and normal use of the roadway by: (1) committing continuous acts of trespass upon the land of the Peddicords; (2) driving stakes along the wheel tracks of the roadway, both within the property lines of the Peddicord land and within the property lines of the Franklin land; (3) constructing a barbed wire spite fence along the wheel tracks of the road and between the double rail wooden fence surrounding the Franklin land and the traveled portion of the road; (4) planting large rocks and stones along the wheel tracks of the road and within the property lines of the Peddicord land; and, (5) placing standard concrete parking bumpers along and within the right-of-way — some within the boundaries of the Peddicord land. It is further alleged that these acts of the defendants constitute a continuing trespass, a nuisance and a danger to the safety of the plaintiffs and others using the road. The declaratory relief prayed was that the court set out the rights of the plaintiffs and others to the road where it bounds or is within the boundaries of the Franklin land, issue an injunction permanently enjoining the Franklins from performing the acts of trespass, etc., already mentioned, and grant punitive damages, costs and reasonable attorneys' fees.

The defendants, Betty and Helen Franklin, filed an answer on April 18, 1972. At the same time, a cross-bill of complaint was filed by Betty M. Franklin also seeking declaratory relief that (1) the Peddicords have no possessory interest on the east side of the road beyond the right-of-way line; (2) the Peddicords have no right to interfere with Betty Franklin, her heirs and assigns, from entering the roadway from any point along her property; and, (3) the plaintiffs and cross-defendants by their deliberate action have caused the roadway to encroach upon the Franklin land, which amounts to a taking of her property without due process of law. She prayed that (1) the cross-defendants be permanently enjoined from any action which would amount to further encroachment on the Franklin land; (2) they be required, at their expense, to move the roadway back to its original position prior to the wrongful trespass and encroachment or,

in the alternative, to award Betty Franklin damages for the land taken; (3) compensatory damages of $5,000 be awarded the cross-plaintiff; (4) punitive damages for the willful, wanton and malicious trespass, actions and harassments be awarded to the cross-plaintiff, as well as costs and attorney's fees; and, (5) the cross-plaintiff have other and further relief. The original plaintiffs and cross-defendants filed an answer to the cross-bill of complaint on May 18, 1972, for the most part denying its allegations.

The suit came before the chancellor (Weant, J.) for hearing on September 1, 1972; and, with the consent of counsel for the respective parties (Charles O. Fisher, Esq. for the plaintiffs and cross-defendants and Raymond E. Beck, Esq. for the defendants and the cross-plaintiff, Betty M. Franklin), the chancellor visited the portion of the road involved in the suit. Upon the chancellor's return the following took place:

"(Mr. Fisher) If the Court please I think the record should show that the property in question, properties in question and the roadway which is at issue have been visited by your Honor and counsel for the plaintiffs and the defendants prior to the beginning of testimony in this case. I would also like the record to show, and I imagine by stipulation, that the location of properties and roadway in question is shown on County Assessment Maps 57 and is at the general location east of Route 27, south of Westminster and north of Taylorsville, at or near the locality known generally as Gypsy Hill. And I believe Mr. Beck has asked me to stipulate, and I have agreed to stipulate, that a drawing, plat made by Evans, Hagan and Holdefer, Inc., dated September 15, 1971, which we have already exhibited to your Honor, shows the property lines as they exist by deed descriptions of the Peddicord and the Franklin properties and the location of the fences that exist on the Franklin side of the road, stakes, stones, and concrete bumpers,

with relation to the present apparently stone portion of the roadway.

"(Court) All right.

"(Mr. Fisher) Is that agreeable to you, Mr. Beck?

"(Mr. Beck) It is.

"(Mr. Fisher) I think we could also stipulate to the effect that as far as we both know this was formerly the old Westminster Road, or a section of it, before Route 27 was built some years ago, and is known as the County Road or old Westminster Road.

"(Mr. Beck) Public right of way."

\* \* \*

"(Thereupon Plat offered in evidence as Stipulated Exhibit No. 1)"

Stipulated Exhibit No. 1 purports to show the beginning point as an "Aluminum Rod Fd." and then shows a course N. 44° 03′ 01″ E. for a distance of 163.20 feet to an "Iron Pin Fd." and thence with a course of N. 43° 37′ 32″ E. 187.10 feet to an "Iron Pin Fd." This line, although beginning on the east side of the existing stone roadway and continuing along the east side for a short distance, then leaves the roadway, indicating a narrow strip of land with a maximum width of approximately six feet from what purports to be the boundary line of the Franklin land and the east side of the existing stone roadway.

The plaintiffs, Peddicord et al., thereafter offered in evidence, through Charles W. Peddicord, Jr., the deeds by which the Peddicords acquired their three parcels of land and Betty Franklin acquired her three parcels (all deeds being duly recorded), i.e., (1) Plaintiffs' Exhibit No. 1, a deed from Wilbur W. Naill and wife, dated August 4, 1956, whereby the Peddicords acquired one acre upon which they built their house; (2) Plaintiffs' Exhibit No. 2, a deed from Wilbur W. Naill and wife, dated August 8, 1964, conveying two parcels: (a) a 2.8 acre parcel which is the Peddicords' picnic grove and (b) a small parcel containing 1,466 square

feet to straighten out the northwesternmost line of the Peddicord land; (3) Plaintiffs' Exhibit No. 3, a deed from Francis A. Zile and wife to Betty M. Franklin, dated October 7, 1961, whereby she acquired a one-acre tract; (4) Plaintiffs' Exhibit No. 4, a deed from the Ziles to Miss Franklin, dated October 31, 1964, whereby she acquired 0.325 of an acre; and, (5) Plaintiffs' Exhibit No. 5, a deed dated March 12, 1968, from the Ziles to Miss Franklin whereby she acquired 5 acres of land.

There was further testimony that indicated that the Naills, from whom the Peddicords acquired their land, never claimed any possessory interest in the east side of the road and that the Ziles, from whom Miss Franklin acquired her land, thought the boundary line was the east side of the road and never claimed any possessory interest beyond the east edges of the road abutting their property. Miss Franklin steadfastly adhered to her position that her property line was the east side of the road, this line being represented to her by Mr. Zile when she bought the land as the correct boundary. She did not accept anything to the contrary on a survey by J. H. Rife shown on a plat dated March 2, 1968, or upon the Evans, Hagan & Holdefer, Inc. plat dated September 15, 1971.

There was testimony in regard to the erection by Miss Franklin of a barbed wire fence, the driving of stakes and the placing of standard concrete parking bumpers as well as various arrests and proceedings initiated by Miss Franklin in regard to the alleged trespasses by the Peddicords and of deliberate driving to the east of the road to increase its width upon the land to the east, the cutting of the barbed wire and other acts by the Peddicords or on their behalf.

During the trial, counsel for the Peddicords successfully excluded certain testimony in regard to a 40-foot strip of land and an easement by Miss Franklin over it on the ground that "the deeds speak for themselves."

There was also testimony introduced by Miss Franklin in support of her contention that, in any event, she had acquired title to the disputed strip by adverse possession by

tacking the adverse possession of Francis A. Zile and his mother to that of Betty Franklin to make up the 20-year period of adverse possession. We will comment more fully upon this evidence later in this opinion.

The chancellor, on December 7, 1972, filed his opinion and a final decree in the case. He concluded that a careful examination of the deeds indicated that the correct line of division between the Peddicord and Franklin lands was the east edge of the road and did not find it necessary to pass upon the contention that Miss Franklin had, in any event, acquired title of the strip of land to the east of the road by adverse possession.

After reviewing the relevant provisions of the several deeds and the testimony, the chancellor stated in his opinion:

> "In addition, a careful examination of the deeds leads us to the conclusion that the line of division between the property of Betty M. Franklin and that of Charles W. Peddicord and Anna M. Peddicord, his wife, is the southeast, east or south edge of the old County Road. The intention to convey to that line is clearly expressed in their respective deeds. Whether one calls this line the south edge, southeast edge or east edge of the road should create no doubt since the road in question runs in a southwest to northeast direction."

> \* \* \*

> "The records include as stipulated Exhibit 1 a survey by Evans, Hagan and Holdefer, Inc., dated September 15, 1971, which is title 'LOCATION OF EXISTING ROADWAY.' While the distances shown generally agree with those in the deeds from the Ziles to Betty M. Franklin, the first bearing shown is N. 44° 03' 01" E., while the bearing for the identical line of the second parcel conveyed by the Ziles to Betty M. Franklin shows it to be South 51 degrees West, or reversely North 51 degrees East.

Further the beginning of the first line of the above survey shows 'an aluminum rod' as the beginning point. There is no mention of such a rod in any of the deeds with respect to this point. We must, therefore, look further to establish the beginning of line 1 of the first parcel conveyed by the Naills to the Peddicords and the terminal point of line 5 of the second parcel conveyed to Betty M. Franklin by the Ziles. We find our solution to the location of this point contained in the deed from the Naills to the Peddicords in which they conveyed 1466 square foot parcel. This point is described as follows:

'Beginning at a point near the *middle* of the original County Road for the end of the third line of the whole tract of which this parcel is a part, the said point also being at the beginning of that part of the whole tract previously conveyed to Charles William Peddicord, Jr. . . . .' (Emphasis added)

"Only by adopting this location (i.e. in the middle of the original County Road) can we arrive at a bearing that corresponds to those in the Franklin and Peddicord deeds. We shall, therefore, accept this description of the northwest corner of the property of Betty M. Franklin and the southwest corner of the property of Charles W. Peddicord and his wife. Stipulated Exhibit 1 was not accompanied by any testimony of a qualified surveyor and thus there was no testimony to support the point locations and bearings used in the survey. It does not in our opinion establish with any accuracy the line of division between the Franklin property and that of the Peddicords.

"Finally, there is nothing in the record to indicate that the Naills from whom the Peddicords acquired their property or their predecessors in title ever claimed any

possessory interest on the southeast side of the road. Their paper title was limited to the width of the road, otherwise Article 21, Section 107, Annotated Code of Maryland, might be controlling."

The chancellor concluded that (1) the division line between the Peddicord and Franklin lands was the east edge of the road; (2) the Peddicords have no possessory interest beyond the east side of the road; (3) the road as originally constructed was 20 feet wide but any diminution of that width occurred for the most part on the west edge of the road inasmuch as the topography of the land on the east side is a steep bank beginning at the northwest corner of the Franklin land and continuing northeast for more than 300 feet along the easterly side of the road; (4) the plaintiffs trespassed on the Franklin land but no monetary damages were proved against them, the chancellor being of the opinion that the construction of the barbed wire fence and the placement of the concrete bumpers were in the nature of an overreaction on the part of Miss Franklin; (5) the trespass by the Peddicords was not willful, wanton and malicious so as to entitle Miss Franklin to punitive damages; and, (6) the original plaintiffs and cross-defendants have not caused the road to encroach on the Franklin land.

The chancellor passed a decree — also on December 7, 1972 — permanently enjoining all of the parties, their heirs and assigns, from performing acts which interfered with the enjoyment and use of the road for free traffic over that road. The decree also declared that the Peddicords had no possessory interest in any land lying beyond the east side of the road, enjoined them from claiming any interest in such land, enjoined the Peddicords from preventing Miss Franklin, her personal representatives and assigns, from entering the road from any point along her land, awarded Miss Franklin one cent damages and required the Peddicords to pay the court costs. From this decree the plaintiffs and cross-defendants filed a timely appeal to this Court.

The appellants earnestly contend that the chancellor erred (1) in concluding from the deeds that the correct line of division between the Peddicord and Franklin lands was the east side of the road; (2) in not giving conclusive effect to Stipulated Exhibit No. 1 indicating a contrary line of division and, further, that the evidence failed to support Miss Franklin's contention that she acquired title to the disputed strip by adverse possession, the issue being properly before us under the provisions of Maryland Rule 885 notwithstanding the fact that the chancellor did not find it necessary to decide — and did not decide — this question below.

### (1)

Our analysis of the provisions of the relevant deeds and testimony indicates to us that the chancellor was not in error in concluding that the correct line of division was the east side of the road; but we do not find it necessary to decide this issue inasmuch as we have decided to remand the case, under Rule 871, without affirmance or reversal for further consideration of the question of whether Stipulated Exhibit No. 1 *requires* a finding contrary to that arrived at by the chancellor.

### (2)

The appellants urge upon us that the chancellor by acting *sua sponte* and without hearing from the original plaintiffs in regard to the chancellor's refusal to give Stipulated Exhibit No. 1 effect committed reversible error. We are of the opinion that the case should be remanded without affirmance or reversal in order that the chancellor might afford the appellants and the appellees a hearing in regard to whatever binding effect the stipulated exhibit might have.

Ordinarily, courts have no power to permit juries to make findings contrary to the terms of a stipulation of the parties in the case. *See Bloom v. Graff*, 191 Md. 733, 63 A. 2d 313 (1949); 83 C.J.S. *Stipulations* § 17, at 37 (1953). It is well settled, however, that all stipulations are not necessarily binding on the courts under all circumstances and, under the

circumstances of a particular case, a court may be justified in disregarding a stipulation. An equity court may not by stipulation be deprived of its power to give equitable relief. 83 C.J.S. *Stipulations* § 17, at 38 (1953). *See Laughlin v. Berens*, 73 App. D. C. 136, 118 F. 2d 193 (1940). Ordinarily, relief from the effect of a stipulation is given in the trial court upon a proper application for such relief and the showing of good cause for granting such an application. *See Girdler v. State*, 42 Misc. 2d 558, 248 N.Y.S.2d 531 (1964) and *Thayer v. Board of Osteopathic Examiners*, 157 Cal. App. 2d 4, 320 P. 2d 28 (1958). *See also* 161 A.L.R. 1161 *Relief from Stipulations*, at 1200 (1946). The "good cause" for granting relief from a stipulation is frequently grounds which would justify the setting aside of a contract such as mutual mistake, fraud, invalidity and the like; but, as we have noted, a court may not be deprived of its ability to give equitable relief by stipulation. *Laughlin v. Berens, supra.* Circuit Judge Soper for the United States Court of Appeals for the Fourth Circuit aptly stated in *Maryland Casualty Co. v. Rickenbaker*, 146 F. 2d 751, 753 (1944), after observing that stipulations of counsel made during the trial should not be disregarded at will:

> "[I]t is obvious that a stipulation of counsel originally designed to expedite the trial should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties."

Indeed, it has been held that a trial court, *on its own motion,* may decline to accept a stipulation when it finds that a fact set up in the stipulation is untrue. *See Macklin v. Kaiser Co.*, 69 F. Supp. 137 (D.C. Or. 1946). *See also Albert v. Brownell*, 219 F. 2d 602 (1954) and *Platt v. United States*, 163 F. 2d 165 (1947).

Then, too, a stipulation may be abrogated or abandoned or its provisions waived by the acts of the parties. *See Loya v. Fong*, 1 Ariz. App. 482, 404 P. 2d 826 (1965); *Roe v. Hetherington*, 74 N. D. 692, 24 N.W.2d 56 (1946) and *Vidon v.*

*Roberts,* 330 Ill. App. 104, 69 N.E.2d 721 (1946). *See also* 83 C.J.S. *Stipulations* § 30, at 84 (1953).

In *Winter v. O'Neill,* 155 Md. 624, 634, 142 A. 263, 267 (1928), our predecessors held that a stipulation by the parties that the sale of property in a tax sale "had been properly advertised" could not be effective against the fact that it had not been advertised for the required statutory period.

It has been held that one of the parties may waive the provisions of a stipulation for his benefit by taking a step or position in conflict with the terms of the stipulation. *Hughes v. Jackson,* 12 Md. 450, 462-463 (1858). *See Line v. People,* 153 Colo. 368, 386 P. 2d 52 (1963); *In re Miller's Estate,* 143 Cal. App. 2d 544, 299 P. 2d 1005 (1956); *Roe v. Hetherington, supra; Gorman v. Wilson,* 186 Okla. 435, 98 P. 2d 600 (1939); *Meyn v. Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S. E. 558 (1937).

In the present case the stipulation was that the Evans, Hagan & Holdefer, Inc. plat, dated September 15, 1971, "shows the property lines as they exist by deed descriptions of the Peddicord and the Franklin properties and the location of the fences that exist on the Franklin side of the road, stakes, stones, and concrete bumpers, with relation to the present apparently stone portion of the roadway."

As we have observed, the chancellor found that the stipulated plat *did not show the correct property lines as existed in the deeds* and further that the stipulated plat was not supported by testimony of a qualified surveyor to support the point locations and bearings used in the survey. Then, too, it appears that the plaintiffs did not rely upon the stipulated plat as, in itself, establishing the *correct line of division* between the Peddicord and Franklin properties but, on the contrary, introduced the relevant deeds into evidence and relied upon *the deeds* as the best evidence of the boundary line to exclude, successfully, oral testimony relating to that subject. Upon the remand, the chancellor may find that the plaintiffs below waived any benefits under the stipulation or, indeed, that the stipulation had been

abandoned by the acts of both parties, Miss Franklin having indicated in her testimony that she did not consider that the dividing line had been established by the stipulated plat. There were instances, however, in the record where the plaintiffs appeared to rely upon the stipulated plat.

In view of the lack of any formal motion for relief from the provisions of the stipulation, we have concluded, as already indicated, to remand the case to the lower court to permit additional pleadings, take additional testimony if thought necessary and have any additional proceedings in order to explore more fully whatever binding effect the stipulated exhibit might have.

(3)

The appellees contend with much force that, in any event, Miss Franklin has title to the disputed strip by adverse possession. The appellants contend that Francis A. Zile, when he farmed the Franklin land for his mother, Mrs. Mary E. Zile, after she acquired the Franklin land on October 25, 1945, and later when he acquired the land from his mother, did not exercise actual possession over the steep embankment sufficient to establish adverse possession which Miss Franklin could tack to her adverse possession after she acquired the land from the Ziles.

Mr. Zile testified that he had farmed the land to the east edge of the road where the land was flat, but never farmed the bank because it was too steep, but on occasion would cut back briars on the bank so that his automobile would not be scratched when he used the road. He further testified that the Ziles maintained the road "to the east side of the roadway" and that no one during the Ziles period "ever made a claim to property on the east side of the roadway." He further stated that his family "had always held to the edge of the road."

Bearing in mind our observation in *Goen v. Sansbury*, 219 Md. 289, 296, 149 A. 2d 17, 22 (1959) that "possessory acts of an outlying and uncultivated piece of land may be proved by acts of ownership somewhat different from those required with regard to land under enclosure and actual cultivation,"

the chancellor might conclude on the remand that the acts of possession over the steep bank were sufficient to establish an actual and adverse possession by the Ziles which might be tacked to Miss Franklin's undoubted acts of adverse possession if the chancellor decides to consider and decide the issue of adverse possession. In regard to this issue, however, we do not make any determination, preferring to leave it to the chancellor upon the remand as we have indicated.

> *The case is remanded to the lower court without affirmance or reversal pursuant to Maryland Rule 871 for further proceedings in accordance with this opinion, the costs below and in this Court to abide the result in the lower court.*