494 A.2d 1139

**COMMONWEALTH of Pennsylvania**

v.

**PENN VALLEY RESORTS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1985.

Filed June 14, 1985.

388

Jeffrey E. Leber, District Attorney, Coudersport, for Commonwealth, appellee.

Before DEL SOLE, HESTER and FEENEY, JJ.*

HESTER, Judge:

On October 20, 1983, a jury convicted appellant, Penn Valley Resorts, Inc., of involuntary manslaughter, reckless endangerment and two counts of furnishing liquor or malt beverages to minors and visibly intoxicated persons. Post trial motions for a new trial and in arrest of judgment were denied, and appellant was fined $10,000.00 on the involuntary manslaughter conviction and $1.00 on each count of furnishing liquor or malt beverages to minors and visibly intoxicated persons. The charge of reckless endangerment was held to merge with involuntary manslaughter for purposes of sentencing. Appellant perfected this appeal from the judgment of sentence of January 19, 1984. The facts were as follows:

On May 8, 1981, 60 undergraduate students from the State University of New York at Alfred, New York (hereinafter "Alfred Tech"), a two-year agricultural and technical

---

* Judge John M. Feeney, of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

college, drove to Genesee, Potter County, Pennsylvania for a dinner dance at appellant's resort facility. A student representative made arrangements with appellant's president, Edwin Clancy, whereby appellant agreed to provide appropriate facilities, serve dinner and furnish an open bar. The students arranged for the music for dancing.

The deceased, William Edward Frazer, Jr., a 20-year-old Alfred Tech student, attended the dinner dance. He consumed sufficient alcohol during the affair to cause him to stagger, slur his speech, quickly alternate his moods and ultimately cause a fatal automobile accident.

At the end of the evening, several of Frazer's friends, notably Phillip Knapp, tried extensively to prevent Frazer from driving his vehicle on the 45-minute return trip to Alfred Tech. Eventually, Knapp was alone with Frazer in the parking lot of appellant's resort. Knapp held Frazer's car keys and waited for the arrival of state police who were summoned by two of appellant's patrons who lived nearby. At one point, Knapp had to wrestle and strike Frazer to resist his attempts to grab the car keys.

Before the police arrived, Frazer went to his car and told Knapp that he was looking for a gun to force Knapp to release the keys. Fearing for his safety, Knapp reluctantly released the keys, and Frazer drove away. Shortly thereafter, Mrs. Gavitt and her daughter, the aforementioned neighbors/patrons, returned and offered to drive Knapp back to the campus. En route some six and one-half miles from appellant's facility, Knapp and the Gavitts came across Frazer's overturned vehicle on Route 19 just across the state border into New York. Frazer's body was trapped inside.

It was ascertained that Frazer had operated his vehicle into the opposite, southbound lane and struck a bridge abutment, causing said vehicle to flip and become airborne for 75 feet. It landed on its roof, slid 400 feet and came to rest in mid-highway. Frazer was dead at the scene, having suffered massive head injuries. A blood alcohol analysis

disclosed blood alcohol content of .23. After investigation, appellant was charged with the four offenses.

Appellant's first argument is that a corporation is not a "person" who can be found guilty of involuntary manslaughter or reckless endangerment. Additionally, appellant argues that without proof that Edwin Clancy's actions were "condoned, sanctioned or recklessly disregarded by the Board of Directors," it cannot be held criminally responsible for such actions.

 Under § 307(a)(3) of the Crimes Code, appellant may be convicted of a crime committed by Edwin Clancy in his position as "a high managerial agent." Section 307(a)(3) sets forth that:

A corporation may be convicted of the commission of an offense if..... the commission of the offense was authorized, requested, commanded, performed or recklessly tolerated by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment.

Section 307(a) does not limit those offenses in the Crimes Code for which a corporation may be held accountable. Furthermore, this principle of criminal accountability of corporations has been held to apply to all offenses set forth in the Code. *Commonwealth v. Schomaker*, 293 Pa.Super. 78, 437 A.2d 999 (1981), reversed on unrelated grounds, 501 Pa. 404, 461 A.2d 1220 (1983). We do not agree with appellant that "persons," as used in the statutory definition of involuntary manslaughter and reckless endangerment, *see* 18 Pa.C.S.A. §§ 2504(a), 2705, applies only to individuals to the exclusion of corporations.

 There is no requirement in § 307(a)(3) that the criminal action must be "condoned, sanctioned or recklessly disregarded" by the Board of Directors. Corporations are criminally accountable for the actions of a "high managerial agent" who commits a wrongdoing in the scope of his office. This corporate accountability is based upon a simple principal/agency relationship and not upon a corporation

affirming the officer's act. Appellant concedes that Edwin Clancy, acting as president, was its high managerial agent.

■ We hold, therefore, that a corporation is indeed a "person" for criminal culpability purposes and that it need not affirm the actions of its high managerial agents to be accountable therefor.

Next, appellant raises several sufficiency arguments. First, it asserts that involuntary manslaughter was not proven beyond a reasonable doubt because there was insufficient evidence to prove that 1) any of its employees committed a lawful or unlawful act in a "reckless or grossly negligent manner", and that 2) such act or acts directly caused Frazer's death and were the probable and foreseeable cause of his death. With respect to reckless endangerment, appellant argues that 1) none of the employees recklessly engaged in conduct which 2) placed Frazer or other patrons in "danger of death or serious bodily injury."

In support of these sufficency arguments, appellant loosely interprets the facts. According to appellant, neither Edwin Clancy nor other employees knew Frazer prior to the dinner dance. They also did not know that Frazer had a low tolerance for alcohol.

Appellant also points out that Edwin Clancy immediately refused to serve Frazer more alcohol upon discovering his intoxication and offered to talk with him concerning his possible alcoholism. Moreover, appellant contends Clancy demonstrated exemplary behavior by walking to the parking lot, assisting the other patrons in subduing Frazer and departing only upon seeing that Frazer was in the care of his best friend, Phillip Knapp.

Appellant cites incidents that, when reviewed in an isolated manner, point to reasonable behavior. By reviewing these incidents in context with all the facts, and in a light most favorable to the verdict winner, *Commonwealth v. Keblitis*, 500 Pa. 321, 456 A.2d 149 (1983); *Commonwealth v. Kennedy*, 499 Pa. 389, 453 A.2d 927 (1982), the acts of

Mr. Clancy do indeed support guilty verdicts for involuntary manslaughter and reckless endangerment.

Dorm council president James Corriveau and resident hall director Jeff Hurrin testified that they called Edwin Clancy several times in preparation for the dinner dance. Both men instructed Clancy that most students attending were not yet 21 years old, the minimum age for alcohol consumption in Pennsylvania. Clancy replied that his facility had no problems entertaining minors in the past.

■ The victim was 20 years old on May 8, 1981. He was born September 20, 1960, which establishes his exact age as 20 years and 8 months at his death. Since the forensic toxicologist verified that Frazer's blood alcohol content was .23, it follows that he drank intoxicating beverages shortly before the fatal accident. Furthermore, there was sufficient evidence that he consumed all this alcohol on appellant's premises since his friends testified that he was not drinking prior to arriving at Penn Valley Resorts, Inc. and that he did not leave the resort from 7:00 P.M. until closing between 1:00 A.M. and 2:00 A.M.

Students Sue Mariott and James Roth, who were under 21 years of age on May 8, 1981, testified that they were not asked to present a liquor control card or other documentation of age before being served alcoholic beverages at the dinner dance. There was also testimony that Edwin Clancy himself served drinks from the open bar throughout most of the evening. The jury properly concluded, therefore, that, through its president, appellant violated the Pennsylvania Liquor Code by serving the victim, a person not of drinking age.

■ In addition to having served alcohol to minors, there was sufficient evidence that appellant, through its high managerial agent Edwin Clancy, served alcohol to a visibly intoxicated person in William Frazer. From 7:00 P.M. until the open bar closed at 10:30 P.M., Frazer drank double shots of whiskey and a sloe gin fizz. It was not known how many drinks he consumed from the open bar tended by

Clancy; nevertheless, Frazer's behavior reflected significant drinking.

Frazer danced to fast music, something his friends rarely observed. While sitting at the dinner table as the band played until 1:00 A.M., Frazer would alternate between depression and gaiety. He was also seen staggering to the men's room.

After the open bar was closed, Frazer went to the public bar. When he complained about the amount of whiskey poured into a double shot glass at 1:00 A.M., Edwin Clancy intervened. In an effort to temper Frazer, Clancy poured more whiskey into the glass. Immediately thereafter, Clancy allowed Frazer to order another drink. As Frazer drank, Clancy remarked that Frazer obviously had a problem with excessive alcohol consumption.

Frazer would not leave, so Clancy presented a challenge in hope of compelling him to leave. The challenge was Clancy's placing a cocktail on the bar and instructing Frazer that if he were not an alcoholic, Frazer could leave without drinking the cocktail. Frazer drank it and finally walked to the parking lot with his friends.

Once outside, Frazer's friends pleaded with him to allow someone to drive his car. When Frazer locked himself in the car, James Corriveau returned to appellant's facility to call the police. Clancy prevented Corriveau from calling the police; instead, Clancy tried to settle the matter himself. He walked to the parking lot and challenged Frazer to a fight to get Frazer to step from his car. When Frazer emerged, two friends locked the car doors, and Clancy retreated to his facility instructing the friends to resolve the problem themselves.

As the parking lot confrontation continued, Frazer's friends left, except Phillip Knapp, who remained to prevent Frazer from driving. When Knapp wrestled the car keys from him, Frazer ran to appellant's facility, where Clancy and other employees were preparing to leave. Knapp followed and attempted to call the police.

Clancy prevented Knapp from calling by pushing him outside. Clancy then acquired the keys from Knapp and promptly handed them to Frazer. This evidence supports the inference that Clancy had grown weary of Frazer's temper and obstreperous conduct. Fearing dire consequences to his business and liquor license if the police were summoned, Clancy subdued Frazer by opting for the only available alternative of giving him his car keys.

After Clancy and his employees departed, Knapp was left alone with Frazer. As discussed above, after Knapp wrestled the keys from Frazer a second time, Frazer searched his car for a gun and Knapp released the keys. Frazer then drove away and was killed shortly thereafter.

■ This evidence establishes that appellant, through its high managerial agent, committed involuntary manslaughter and reckless endangerment. With respect to involuntary manslaughter, Clancy committed the unlawful act of serving alcohol to Frazer within the scope of his employment. This was done in a reckless or grossly negligent manner because, despite having notice that most students were not of legal drinking age, Clancy served them without requiring proof of their age. Furthermore, regardless of Frazer's age, Clancy served him while he was visibly intoxicated and after Clancy commented on Frazer's drinking problem. This behavior also amounts to reckless endangerment.

■ In addition, the causation factors of both offenses were satisfied by the facts. Clancy's reckless and grossly negligent manner placed Frazer in danger of death or serious bodily injury. We must clarify that the serving of intoxicating beverages to a minor or visibly intoxicated person alone may not constitute involuntary manslaughter or reckless endangerment. Here, it was the serving of alcohol, coupled with several crucial elements known to Clancy, which established causation and therefore, the offenses.

■ Clancy knew that Frazer was continuously entertained at Penn Valley from 7:00 P.M. until after 1:00 A.M. Clancy observed Frazer's highly inebriated condition, commented on his drinking problem, observed his violent resistance to his friends' attempts to prevent his driving, refused to call the police, grabbed the keys from Knapp and handed them to Frazer and drove away ridding himself and appellant of the confrontation. This evidence supports a finding that Clancy's serving of alcohol to Frazer, and subsequent encouragement of Frazer's driving his automobile, placed Frazer in danger of death.

It is appellant's next contention that the lower court erred in submitting a written instruction to the jury on the elements of involuntary manslaughter which included three points for charge prepared by the Commonwealth. Appellant complains that this written instruction called the jury's attention to malice, the unrelated charge of third degree murder and certain language underlined by the Court. Also, according to appellant, this written instruction emphasized elements which the Commonwealth did not have to prove.

On three occasions during deliberations, the jury requested a definition of involuntary manslaughter. Following a discussion with counsel, the court decided to submit the written definition of involuntary manslaughter as set forth in Pa. Suggested Standard Jury Instructions (Criminal), Chapter 15.2504.

In addition, the lower court submitted three Commonwealth points for charge. One point stated that reckless conduct need not be the sole cause of death; rather, it was sufficient to sustain a verdict of involuntary manslaughter if such conduct was a direct and substantial factor in causing death. The second charge discussed recklessness and how it may exist where the accused intentionally disregarded a standard of care and, in doing so, failed to perceive the risk of death or serious bodily harm. Finally, the third Commonwealth point for charge discussed causation and how it was sufficient proof that the accused's

conduct started a chain of causation leading to death, rather than proving that it was the immediate cause of death.

■■■ We find no error in the submission of this written jury instruction along with three written points for charge to the jury. Having requested thrice for the definition of involuntary manslaughter, the jury's misunderstanding of the offense was not rectified by earlier oral instructions. Furthermore, the court instructed the jury to disregard the underlineations on the written definition of involuntary manslaughter.

We believe that this written instruction did not call attention to third degree murder; that offense was not charged and the jury was obviously aware, having started deliberations, that a third degree murder charge was not before them. Also, the charge did not emphasize what the Commonwealth need not prove. Rather, it defined the scope of involuntary manslaughter and causation.

■■■ Even without this instruction of precaution, we do not agree that appellant would have suffered prejudice. Admittedly, the underlineations called attention to "death" and "negligent" conduct. At the same time, they focused on "unjustifiable risk" of death, "grossly unreasonable" disregard of that risk and conduct that was "grossly negligent." These qualifying words made clear to the jury that an accused's conduct must be extreme before criminal liability can be found. Considering the charge as a whole, we hold that there was no reversible error. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983); *Commonwealth v. Wortham*, 471 Pa. 243, 369 A.2d 1287 (1977).

Finally, appellant argues that the lower court erred in denying its request to charge the jury on the possibility of intervening causes of death. Appellant states, without reference to specific events or where they were discussed in the record, that there were "numerous events and interrelationships between the victim and others besides the defendant" that could have served as intervening causes of death. Without reference to specific intervening causes and evi-

dence thereof, we shall not find reversible error for the court's refusal to instruct on intervening causes.

Judgment of sentence affirmed.