605 A.2d 138

**Nelson MINOR**

v.

**STATE of Maryland.**

**No. 8, Sept. Term, 1991.**

Court of Appeals of Maryland.

April 29, 1992.

Robert M. Bell, J., dissented and filed opinion.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

This case involves Maryland's "reckless endangerment" statute which was enacted as ch. 469 of the Acts of 1989 and is now codified as Maryland Code (1992 Repl.Vol.), Article 27, § 120. It provides in subsection (a) that any person who

"recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both."

Subsection (b) provides that § 120 is not applicable "to any conduct involving the use of a motor vehicle as defined in § 11–135 of the Transportation Article." Subsection (c) provides that the statute is not applicable "to any conduct involving the manufacture, production, or sale of any product or commodity."

I.

At a nonjury trial in the Circuit Court for Baltimore City (Pines, J.) held on February 14, 1990, the appellant, Nelson Minor, was convicted of reckless endangerment in violation of § 120(a) and given a suspended four-year sentence. The case was tried on an Agreed Statement of Facts which disclosed that, at 12:51 a.m. on December 13, 1989, the police responded to the appellant's residence where they discovered that his brother, Kenneth Minor, had been shot

through the mouth and killed. Found on the floor of the living room area was a pump shotgun which contained a spent shotgun shell in the chamber and two other shotgun shells in the magazine. The appellant, who was present when the police arrived, gave a formal written statement to the police. He said that while sitting in the dining room, and in the course of drinking several fifths of fortified wine with his brother, they discussed playing "Russian Roulette." The appellant acknowledged that he had a loaded shotgun with him at the table and that he told his brother that "[y]ou can't play Russian Roulette with a shotgun because it don't have a barrel ... [and] once you put one [bullet] in the chamber, that's it." The appellant said that the victim asked for the shotgun and that he handed it to him, daring him to play Russian roulette, "thinking that he was going to cut the safety off and give it back to me." The appellant admitted that his brother knew that the safety was off and that the gun was loaded. He said that, to his surprise, his brother, who was forty-two years old, pulled the trigger and fatally shot himself to death.

The appellant told the police that he had the shotgun with him because he had had "some words" with a person who he thought might come to his house. He said that he and his brother had been drinking throughout the day and together drank "about three or four fifths [of wine] that day" and that he (the appellant) was "high off the drinks, cocaine and heroin." The appellant told the police that he did not think that his brother "would do nothing like that [because] [w]e had played with it before [and] I used to let him shoot it." Asked by the interrogating police officer whether he urged his brother "to go first to, call his bluff," he answered that he had and that his brother told him that "you know that I will do it." Appellant said that when he handed the gun to his brother, he thought that he was "bullshitting me so I gave it to him."

Upon his conviction of reckless endangerment, which was the only charge brought against him, the appellant took an appeal to the Court of Special Appeals. That court af-

firmed the judgment. *Minor v. State*, 85 Md.App. 305, 583 A.2d 1102 (1991). It first concluded that the Agreed Statement of Facts established that the appellant "expected the victim ... to turn off the safety and return the gun," and consequently the trial court was bound to believe that it was the appellant's "subjective belief ... that the victim would not pull the trigger and would return the gun." *Id.* at 311, 583 A.2d 1102. The court nevertheless found no merit in the appellant's argument that "handing someone a loaded gun and, in effect, daring him to use it on himself, does not create a substantial risk that he will do so." *Id.* at 313, 583 A.2d 1102. In this regard, it was not persuaded by the appellant's argument that it was the victim who created the risk of death or serious physical injury when he held the gun to his head and pulled the trigger since this "was the result of [the victim's] unforeseeable, independent act of free will." *Id.*

After analyzing the statute, its legislative history, and similar statutory language contained in § 211.2 of the Model Penal Code, together with its accompanying commentary, the intermediate appellate court held that to commit the crime of reckless endangerment under § 120(a), "a defendant need not intentionally cause a result or know that his conduct is substantially certain to cause a result." *Id.* at 316, 583 A.2d 1102. Rather, the court said that " ' "[r]ecklessness" in causing a result exists when one is aware that his conduct *might* cause the result, though it is not substantially certain to happen.' " *Id.* at 316, 583 A.2d 1102, quoting from LaFave & Scott, *Substantive Criminal Law*, § 3.7(f) (1989) (emphasis in original). The court determined that the statutory test was primarily objective, and not subjective—that all that is required is that the defendant consciously disregard a substantial risk, even if the chances of harm are improbable. *Id.* at n. 4. It thus held that the offense of reckless endangerment under § 120(a) "is not dependent upon intent." *Id.* On the evidence before it, the court concluded that the appellant "was aware of the ultimate outcome involved in playing Russian roulette with a

loaded shotgun" and consequently his conduct created a substantial risk of death or serious physical injury, *i.e.*, "that his brother would do what he did." *Id.* at 319–20, 583 A.2d 1102.

We granted certiorari to consider the important issue of public significance raised in the case.

## II.

The appellant maintains that to be convicted under § 120(a), he must have acted "recklessly" and created a substantial risk of death or serious bodily injury to his brother. But, he says, the victim's act of pulling the trigger was a voluntary act of suicide that was unanticipated and, therefore, the evidence did not show that his conduct was reckless within the coverage of § 120(a). The appellant contends that § 120(a) was modeled after § 211.2 of the Model Penal Code, entitled "Recklessly Endangering Another Person," which provides that the crime is committed if a person "recklessly engages in conduct which places or may place another person in danger of death or serious injury." As to the meaning of "recklessly," § 202(2)(c) of the Model Penal Code defines the term as follows:

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."

The appellant contends that § 120(a), having been modeled after the Model Penal Code, must be afforded the same meaning. Thus, he argues that the defendant must be actually aware of the risk, thus necessitating an inquiry into his subjective state of mind. This "awareness," according to the appellant, "involves more than merely an aware-

ness of the circumstances which, in combination, form the risk." Instead, it is suggested that, in order to act recklessly under the statute, the actor must perceive that the risk is substantial and that he consciously disregarded it. Thus, appellant claims, even if he was aware of a risk, but underestimated its seriousness, he is at most guilty of negligence for his misjudgment.

The appellant maintains that nothing in the Agreed Statement of Facts supports a finding that he actually was aware of a substantial risk that his brother would use the shotgun to end his life, or that he knew that his brother was suicidal or prone to acts of irrationality. Indeed, appellant claims that he perceived no risk because he believed that his brother would simply return the gun to him.

As to causation, the appellant says that the question is whether his conduct can fairly be said to have created a substantial risk within the contemplation of § 120(a). Guilt of the offense, he says, depends not upon harm being caused but only upon creation of a risk of harm. As to this, he says that the victim was not just a willing participant in the occurrence but indeed created the risk itself. He says that merely handing his brother the loaded gun, and daring him to use it, did not create a risk that his brother would in fact do so, since his brother was in complete control of the gun. In other words, the appellant urges that because the victim had control of the gun, knew that it was loaded and operable, and was exercising his own free will, his death was not a reasonably foreseeable consequence.

### III.

In seeking to ascertain the legislative intention in the enactment of § 120(a), the beginning point is the language of the statute itself. *See Bacon v. State*, 322 Md. 140, 147, 586 A.2d 18 (1991); *In re Demetrius J.*, 321 Md. 468, 473, 583 A.2d 258 (1991); *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513–16, 525 A.2d 628 (1987). The words of the statute must ordinarily be given their natural and usual

meaning in the context of the legislative purpose and objective in enacting the statute. *State v. Bricker*, 321 Md. 86, 92, 581 A.2d 9 (1990); *Webb v. State*, 311 Md. 610, 618 n. 2, 536 A.2d 1161 (1988); *Tucker v. Firemen's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986).

It is readily evident from the plain language of § 120(a) that it was enacted to punish, as criminal, reckless conduct which created a substantial risk of death or serious physical injury to another person. It is the reckless conduct and not the harm caused by the conduct, if any, which the statute was intended to criminalize.

The sparse legislative history underlying the enactment of § 120(a) does not mention the Model Penal Code, nor does it give any indication whether the legislature intended that the statute be construed as establishing a subjective or objective standard in determining whether the accused's risk-creating conduct was reckless.[1] There is no indication in § 120(a) that the State, to obtain a conviction, must establish that the accused was actually aware that his risk-creating conduct was reckless and that he consciously disregarded the risk.

Reckless endangerment statutes similar in purpose to § 120(a) have been enacted in other jurisdictions. *See Minor v. State, supra*, 85 Md.App. at 314, n. 2, 583 A.2d 1102. In *People v. Davis*, 72 N.Y.2d 32, 530 N.Y.S.2d 529, 526 N.E.2d 20 (1988), the court, in interpreting New York's reckless endangerment statute, held that the defendant's subjective intention is irrelevant. The court said that reckless endangerment was defined in the statute in terms of the risk produced by the defendant's conduct and not intent. The determination whether the crime has been committed, the court concluded, entails an objective assessment of the degree of risk presented by the defendant's reckless conduct. To like effect, *see Hennemeyer v. Com.*, 580 S.W.2d 211 (Ky.1979); *State v. McLaren*, 135 Vt. 291, 376 A.2d 34

---

1. Neither the Model Penal Code itself, nor its definition of "reckless" in § 202(2)(c), has been adopted in Maryland.

(1977). *See also Com. v. Sanders*, 489 A.2d 207 (Pa.Super.1988).

We conclude that whether the accused's conduct, which created the substantial risk, was reckless under § 120(a) is a matter for objective determination, to be made by the trier of fact from all the evidentiary circumstances in the case. It is not, as appellant contends, a subjective determination predicated upon his actual perception or state of mind as to whether his conduct created a substantial risk of death or physical injury. In other words, it is not the accused's subjective expectation of what his risk-creating conduct would entail that is determinative. As the Court of Special Appeals held, guilt under the statute does not depend upon whether the accused intended that his reckless conduct create a substantial risk of death or serious injury to another. The test is whether the appellant's misconduct, viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe, and thereby create the substantial risk that the statute was designed to punish.

In summary, the appellant's reckless conduct was evidenced by the following: he handed the loaded shotgun to his brother with the safety off and ready to fire; the two men had consumed three or four fifths of wine and the appellant admitted that he was "high off the drinks, cocaine and heroin"; the appellant's brother indicated an intention to put the gun to his head and pull the trigger; and the appellant, in giving the shotgun to his brother, dared him to do so and gave him the gun in order to "call his bluff."

The standard to be applied in reviewing the legal sufficiency of evidence to support a criminal conviction in a nonjury case is whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Wiggins v. State*, 324 Md. 551, 566, 597 A.2d 1359 (1991). In this regard, we determine "whether after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential ele-

ments of the crime beyond a reasonable doubt." *Wilson v. State*, 319 Md. 530, 535, 573 A.2d 831 (1990); *West v. State*, 312 Md. 197, 207, 539 A.2d 231 (1988).

In light of the evidence in this case, it is manifest that the trial judge did not err in finding the appellant guilty of the offense of reckless endangerment.

JUDGMENT AFFIRMED, WITH COSTS.

ROBERT M. BELL, dissenting.

The majority holds that the petitioner engaged in reckless conduct which created a substantial risk of death or serious physical injury when he handed a loaded shotgun, with the safety off and ready to fire, to his brother. The recklessness of the conduct was evidenced, it says, by both the amount of intoxicants the brothers had consumed and the fact that the petitioner admitted being "high off the drinks, cocaine and heroin". That the petitioner was aware of his brother's stated intention to put the gun to his head and pull the trigger is another important factor the majority considered in reaching its decision, as is the fact that the petitioner, when he handed the shotgun to him, in effect, dared his brother to "play Russian roulette" and called his bluff. The Court's holding is premised upon the petitioner's guilt being determined, not upon the petitioner's subjective intention, but rather, by objectively viewing his conduct so as to assess whether it creates the substantial risk against which the statute was designed to protect. By taking this approach, the majority focuses on the wrong issue; it is not the intent with which the petitioner acted so much as it is whether the action that the petitioner took triggered the protections of the statute.[1]

---

1. It is interesting, if not ironic, to note that Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 120 punishes conduct by imposition of a fine and imprisonment for up to five years, which, under the recent opinion of *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992), would not be a sufficient predicate for the award of punitive damages.

Although it acknowledges that the petitioner raised the issue, the majority never directly addresses causation, preferring to rest its opinion on, as we have seen, the objective nature of the proof required for conviction. In my opinion, however, the issue of causation is not only pivotal, but dispositive. Whatever the outcome of the discussion concerning the required intent, unless the conduct engaged in is such as to trigger the statute, the intent with which an accused acted is never reached.[2] Notwithstanding that the parties may have been drinking and, indeed, may have been hopelessly intoxicated, handing a weapon to someone, whatever the actor's intent, is too remote an action to create a risk of injury or death. The risk of injury or death is created by pointing and, ultimately, firing the gun. That was done by the victim's exercise of volition. Consequently, I would hold that the petitioner's conduct was one step removed from that which is the subject of punishment under Maryland Code (1957, 1992 Repl.Vol), Art. 27, § 120, the Maryland reckless endangerment statute.

The cases upon which the majority relies are not to the contrary. In each of them, the defendant's conduct, by itself and *directly*, created the substantial risk of death or serious bodily injury; the person who was the object of that conduct contributed not at all to, and certainly did not participate in, the creation of the risk. Nor was there any indication that it was necessary that he or she do so. In

---

**2.** The intent issue is presented in this case because the case was submitted to the trier of the facts on an agreed true statement of facts, which required the factfinder, under these circumstances to accept as true the evidence presented to it. *See Peddicord v. Franklin*, 270 Md. 164, 174, 310 A.2d 561, 567 (1973); *Barnes v. State*, 31 Md.App. 25, 35, 354 A.2d 499, 505 (1976). Had this been a contested case, my guess is that there would have been no need to address whether the proof of the defendant's intent must be objective or subjective. The evidence presented in this record would have been sufficient. If believed by the factfinder the evidence presented would have supported a conviction for reckless endangerment, assuming, of course, that the conduct proved came under the statute. The trial court in a contested case would not have been obliged to accept as true the petitioner's protestations that he lacked an appreciation of the risk or its seriousness.

**446**

*People v. Davis,* 72 N.Y.2d 32, 530 N.Y.S.2d 529, 526 N.E.2d 20, 21 (1988), the Court noted that if the gun which the defendant pointed at another person, pulling the trigger, had been capable of firing, the defendant would have been guilty of reckless endangerment. *See Commonwealth v. Sanders,* 339 Pa.Super. 373, 489 A.2d 207, 210 (1985) (the defendant held the victim's neck so tightly that she was unable to breathe and pulled her backwards into a room); *Hennemeyer v. Commonwealth,* 580 S.W.2d 211, 215 (Ky. 1979) (the defendant fired a gun four times in the direction of police); *State v. McLaren,* 135 Vt. 291, 376 A.2d 34, 35 (1977) (the defendant pointed a gun at a woman while attempting to kidnap her); *People v. Graham,* 41 A.D.2d 226, 342 N.Y.S.2d 361, 364 (App.Div.1973) (the defendant intentionally fired a shot eight inches to the side of another person's head). *But see Commonwealth v. Penn Valley Resorts, Inc.,* 494 A.2d 1139 (Pa.Super.1985). There, the convictions of a corporation for reckless endangerment and involuntary manslaughter were affirmed. The court made clear that serving alcoholic beverages to a visibly intoxicated person is not, by itself, sufficient to constitute either offense. 494 A.2d at 1144. It held, however, that "it was the serving of alcohol, coupled with several crucial elements known to Clancy [the corporation's president] that established causation ...," namely

Clancy observed [the victim's] highly inebriated condition, commented on his drinking problem, observed his violent resistance to friends' attempts to prevent his driving, refused to call the police, grabbed the keys from [the victim's friend] and handed them to [the victim] and drove away ridding himself and appellant of the confrontation.

494 A.2d at 1144–45. The court concluded that the evidence "supported a finding that Clancy's serving of alcohol to [the victim] and subsequent *encouragement* of [the victim's] driving his automobile, placed [the victim] in danger of death." (emphasis added) *Id.* I submit that the level of "encouragement" present in *Penn Valley Resorts* is missing in this case.

In addition, one of the cases upon which the majority relies *Hennemeyer,* explicitly states that in order for the defendant's conduct to be sufficient to sustain a conviction for reckless endangerment, it must be such that the defendant could be convicted of assault should physical injury result. 580 S.W.2d at 214. On the facts of this case, certainly, the petitioner could not have been convicted of, nor even charged with, assault. It may very well be that the unavailability of any alternative charges prompted the prosecution to charge reckless endangerment.

The effect of the majority's interpretation of § 120 is to hold one adult responsible not only for the reckless conduct of another, but for that person's intentional conduct, as well. This is so because the majority defines creation of the risk so broadly that it does not only encompass direct possibilities of injury but indirect possibilities as well. In this case, for there to be a possibility of injury, the person allegedly placed at risk must act; unless that person supplements the action of the defendant with an action of his or her own, there really is no danger at all. And because a further action is required of the person allegedly endangered, it is difficult, if not impossible, to draw a line between conduct by the defendant that is criminal and conduct by the defendant that is not.

It is the creation of the risk, not the actual harm that occurs, that is controlling, a fact that the majority explicitly recognizes, as it must. *See* § 120. Therefore, applying the majority's rationale will lead to absurd results. Applying that rationale, A knowing that B will drive to the rendezvous, intending that B drive home, and actually believing that B will do so, recklessly endangers B by *buying* B enough drinks to render B intoxicated. Similarly, a person who *challenges* another to drag race or dares a friend to drive 100 mph on icy roads, intending that he or she does so and knowing that the friend is partial to such activity, is also guilty of reckless endangerment. The same logic suggests that, in this case, the defendant would still be guilty of reckless endangerment had he, aware that his

brother knew where the rifle was, called his bluff, but without handing him the rifle.

The absurdity of the results is made clear when it is further supposed that, in each of the scenarios posited, the potential victim refused the invitation. Rather than drive the car home, B takes a taxicab; rather than accept the challenge or the dare, the friend unequivocally refuses and goes on his or her way; rather than go and get the gun, or, as in this case, pointing it at his head and firing, the brother replaced the safety and placed the gun down. In each case, it is the action of the person challenged or for whom an opportunity to expose him or herself to a risk is provided that controls whether the risk is created. If that person chooses not to drink the supplied alcoholic beverages or, if he or she does, not to drive the automobile, or, relevant to this case, not to fire the gun, there simply is no exposure to any risk, only an opportunity for such exposure.

If the opportunity provided were exploited, the absurdity is diminished only slightly; it remains the action of the victim that creates the risk of the injury that thereby occurs. Where the victim's conduct results in his or her injury or death, as a matter of policy, an accused should not be held responsible. *See State v. Petersen,* 270 Or. 166, 526 P.2d 1008 (1974). In that case, the issue was the propriety of convicting a defendant of recklessly causing the death of another where the victim was killed in a drag race accident in which he and the defendant had agreed to participate. Adopting the dissenting opinion filed in the intermediate appellate court, the Oregon Supreme Court held that the reckless homicide statute "should not be interpreted to extend to those cases in which the victim is a knowing and voluntary participant in the course of reckless conduct." 526 P.2d at 1009. Relying on *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961), it did so on the basis of "policy considerations [which] are against imposing responsibility for the death of a participant in a race on the surviving racer when his sole contribution to the death is the partic-ipation in the activity mutually agreed upon." (Footnote

omitted) *State v. Petersen,* 17 Or.App. 478, 522 P.2d 912, 921 (1974). *See also Velazquez v. State,* 561 So.2d 347, 351–54 (Fla.App. 3 Dist.1990). The same analysis applies to reckless endangerment cases, in which, as here, there is a mutual agreement to engage in prohibited conduct. However one may choose to characterize the petitioner's conduct, his brother's conduct was not only reckless, but intentional and, indeed, it was that intentional conduct which, in the final analysis, was the cause of his death. It was also the conduct which created the risk. And because it was intentional conduct by the victim that created the risk and caused the harm, in this case, more so than in the drag race cases, "A should not, in all justice, be held for the death of B who was an equally willing and foolhardy participant in the bad conduct which caused his death." W. LaFave & A. Scott, *Criminal Law* § 3.12 at 297.[3]

---

**3.** Focusing on the requisite intent, it is clear that even the cases relied upon by the majority have a subjective aspect. In *People v. Davis,* 72 N.Y.2d 32, 530 N.Y.S.2d 529, 530, 526 N.E.2d 20, 21 (1988), for example, the Court recognized that "a person acts recklessly when he is *aware* of but disregards, a substantial and unjustifiable risk to the degree that his behavior does not comport with the manner in which a reasonable person would have acted under the circumstances." (Emphasis added) In *Commonwealth v. Sanders,* 339 Pa.Super. 373, 489 A.2d 207, 210 (1985), it was expressly recognized that:

> A person commits the misdemeanor of recklessly endangering another person "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury...." This section is, in effect, an ad hoc reckless conduct statute.... A *sine qua non* to a conviction is a conscious disregard of a known risk of death or great bodily harm to another person.... (Citations omitted)

Thus, while, as the majority points out, the petitioner's subjective expectation of what his risk creating conduct entails is not determinative, the majority is wrong when it suggests that the petitioner need not be aware of the risk created. Consciously to disregard a known risk or grossly to depart from a standard of conduct necessarily requires knowledge of the risk and the standard of conduct.