THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDUARDO ROSADO and ANIBAL RODRIGUEZ, Appellants.

First Department, October 12, 1978

APPEARANCES OF COUNSEL

*Harry W. Turkel* for Eduardo Rosado, appellant.

*Melvin N. Borowka* of counsel *(Borowka, Golomb & Muchnick,* attorneys), for Anibal Rodriguez, appellant.

*Timothy J. McGinn* of counsel *(Billie Manning* with him on the brief; *Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This case illustrates the pitfalls of a faultily drawn indictment, the defects in which, in this instance, require reversal of a conviction after jury verdict. The defendants were charged with acting in concert in the commission of robbery in the first degree (Penal Law, § 160.15, subd 2), robbery in the second degree (Penal Law, § 160.10, subd 1), and two counts of criminal possession of a weapon in the second degree (Penal Law, § 265.03), arising out of a gun-point holdup of a taxicab driver.

According to the victim, the robbery was committed by three men, the defendants and another male, never apprehended. The victim testified that the defendant Rosado held a pistol against the back of his head. He offered no testimony that any other gun or weapon was displayed during the robbery. Forty-five minutes after the robbery Rosado and his codefendant, Rodriguez, were stopped by two police officers, who eventually took a loaded pistol from Rosado and a pen gun and three live rounds from Rodriguez. None of the loot was recovered.

The first count of the indictment charged robbery in the first degree, alleging that "the defendants were armed with deadly weapons, to wit, loaded pistols."

The second count charged the defendants "with acting in concert with each other in the possession of a firearm, to wit, a loaded pistol, with intent to use it unlawfully against another." Unfortunately, the indictment did not specify whether the defendants were being charged with the possession of this unidentified pistol at the time of the robbery, or at the time of arrest.

The fourth count charged the defendants "with acting in concert with each other and another in the possession of a firearm, to wit, a loaded pistol with intent to use it unlawfully against another." Thus, the only difference between count two and count four is that the former charged the defendants with acting in concert with each other while the latter charged them with acting in concert with each other and another person.

During a pretrial hearing, the defendants moved to strike both weapons counts on the ground of lack of specificity. In the course of argument the prosecutor made it clear that it

was the People's position that the second count encompassed the pistol used in the robbery, and later recovered from Rosado, while the fourth count applied to the pen gun taken from Rodriguez at the time of his arrest. The People's position regarding the pen gun was stated as follows:

"Your Honor, first let me state that the representation made in the very beginning of this hearing that the people would not be presenting evidence to the Court about the pen gun was based on a misreading of the indictment.

"It was only after I read the grand jury testimony I became familiar of the fact that the grand jury evidence presented to it concerning the pen gun and I have supplied your Honor with a copy of the grand jury testimony concerning that pen gun.

"Very simply, very simply state, *[sic]* your Honor, our position is that these defendants were indicted by the grand jury of Bronx County for the crime of robbery in the first degree.

"Under the theory as presented to the grand jury, and as required by Section 160.15 of the penal law, that they were armed with deadly weapons, during the course of the robbery or in the immediate flight therefrom.

"It's our position that the weapon on Mr.—found on Mr. Rodriguez at the time of his arrest would be a weapon with which he was armed at the time of the commission of the robbery or at least it is a consideration for the trier of the facts, namely the jury, as to whether or not the evidence is sufficient to indicate that Mr. Rodriguez had the weapon on him at the time that the robbery was committed.

"Inasmuch as the statute does not require that that weapon be displayed, the fact the participants in the robbery merely be armed with the weapon at the time that the robbery is committed, as far as the weapons counts are concerned, it is our position that the possession of either weapon, while— during the course of the robbery, while each defendant was armed with the weapon is attributable to the other defendant under the theory of acting in concert.

"Accordingly, we ask this Court to allow testimony concerning the admissibility of the gun."

The following colloquy immediately ensued:

"[defense counsel]: May I inquire then if it's the district attorney's theory and argument that the crime was only

committed if the possession took place during the robbery and what later events revealed may be evidenciary *[sic]* but unless it can be demonstrated that the possession occurred during the robbery that that there is no conviction under that count.

"THE COURT: Yes.

"[assistant district attorney]: Your Honor, that's not our position. Our position is, it would be for the trier of the facts to determine whether or not the defendants did have in their possession at the time of the robbery the loaded weapons or in fact they did have in their possession at the time of the arrest the loaded weapons; and if the trier of the facts felt they did have it in their possession, then they would accordingly be able to find these defendants guilty of the crime of possession of a weapon."

The court indicated its agreement with the People's position and denied the motion to dismiss the weapons charges. It likewise denied a motion for severance of the fourth count based on misjoinder of parties and offenses due to legal insufficiency of evidence showing Rosado's *scienter* of the possession of the pen gun by Rodriguez. Thus, the court, in effect, amended the indictment to charge two separate instances of possession on both weapons counts, that is, a possession in the taxicab during the robbery and a possession 45 minutes later at the time of arrest.

At trial, at the conclusion of the People's case, an order of dismissal was entered as to Rosado on the fourth count. Consistent with that determination, the court, over objection, charged the jury that the fourth count "refers to the defendant Rodriguez only * * * This relates to the pen gun". The court further charged "we're just talking about the pen gun at the time Mr. Rodriguez was apprehended or stopped by the police in the street. We're not concerned with the pen gun at the scene, at the alleged scene of the robbery."

The second count was submitted to the jury against both defendants on the theory that it related to the pistol used in "the actual holdup of [the victim] in his taxicab", and the court also submitted count two to include "the fact that the defendant Rosado * * * had possession of the pistol when he was apprehended and searched on the sidewalk". It cautioned the jury that "what happened on the sidewalk, that I just mentioned, applies only to the defendant Rosado." Appropriate exception to this charge was taken.

Thus, it is evident that count two was submitted to the jury

on two factual bases—possession during the robbery, and possession 45 minutes later on the sidewalk at the time of arrest. The former was submitted against both defendants on a theory of joint culpability, while the latter was submitted only against Rosado. The lesser included offenses of criminal possession of a weapon in the third and fourth degrees, respectively, were also submitted in the alternative under both counts.

During deliberations the jury sent a request to the court for "clarification on second and fourth count for Rodriguez." In response, the court basically reiterated its charge-in-chief on the subject.

The jury acquitted both defendants of the robbery, but convicted Rosado of criminal possession of a weapon in the second degree on the second count. Rodriguez was convicted of criminal possession of a weapon in the third degree under the fourth count.

As originally drawn, the weapon counts of the indictment were defective by their failure to assert facts which supported "every element of the offense charged and the * * * defendants' commission thereof with sufficient precision to clearly apprise the * * * defendants of the conduct which is the subject of the accusation". (CPL 200.50, subd 7.) Neither count specified whether the possession of the weapon referred to the conduct of the defendants at the time of the robbery or of the arrest. Nor was the weapon which was the subject of either charge properly identified. In fact, the only distinguishing feature between the counts—the addition of a third party ("and another") in the fourth count—not only failed to apprise the defendants of the conduct which was the subject of the respective accusations, but, if anything, served to confuse them. If a third party acted in concert with the defendants at all, it would have been at the time of the robbery, not arrest, 45 minutes later, when the pen gun was seized from Rodriguez.

The second count, which, according to the court, referred to the pistol used in the robbery and related, at least in part, to the possession while the robbery was in progress, failed to allege the complicity of a third person, notwithstanding the fact that the People's evidence was consistent that a third male participated in the robbery.

Faced with such ambiguous and misleading charges, the court made an earnest, but unsuccessful, effort to cure the

deficiencies by, in effect, amending, *sua sponte,* the indictment. The result, however, was the assertion of duplicitous counts in violation of CPL 200.30.

CPL 200.30 (subd 1) provides that "Each count of an indictment may charge one offense only." Thus, duplicitous counts, "understood by the court to mean one or more counts of an indictment which, individually, charge more than one offense" *(People v Richlin,* 74 Misc 2d 906, 907) are forbidden. "The test by which to determine whether a single count in an indictment is bad for duplicity is: Could the defendant under it be convicted of either one of the crimes charged therein, should the district attorney elect to waive the other?" *(People v Klipfel,* 160 NY 371, 374.) This rule was transgressed by the court's interpretation that counts two and four each related to two incidents, which, under the facts, were separated by time and location. The defendants were arrested some distance away from the area where the robbery occurred. They had been observed walking together. What attracted the police officers to them was the fact that it was a chilly night (mid-November) and the defendants were carrying their coats over their arms. (No issue is raised on appeal as to the legality of the seizure of the weapons.) There is no evidentiary support for the proposition, and indeed no claim is made, that the defendants were then fleeing from the robbery. As count two was finally submitted, the jury could have found Rosado guilty of possessing the pistol on either occasion. Until the court charged the jury on the fourth count that Rodriguez could be found guilty for possessing the pen gun only at the time of the arrest, he, too, was faced with a duplicitous count, and faced conviction on either crime should the District Attorney have elected to waive the other. Consequently, although the court cured the duplicitous count against Rodriguez when the case was submitted to the jury, throughout the trial each of the defendants was charged with more offenses than there were counts in the indictment. This is not the situation of a statute (e.g., Penal Law, § 175.25*) which defines an offense by providing within one subdivision or paragraph different ways in which the offense may be committed. In such an instance the

---

* "A person is guilty of tampering with public records in the first degree when, knowing that he does not have the authority of anyone entitled to grant it, and with intent to defraud, he knowingly removes, mutilates, destroys, conceals, makes a false entry in or falsely alters any record or other written instrument filed with, deposited in, or otherwise constituting a record of a public office or public servant."

indictment may in a single count group together a series of acts, the commission of any one of which would justify a conviction, and a conviction may be had on proof of the commission of any of the acts, without proof of the commission of the others. *(Bork v People,* 91 NY 5, 13; *People v Nicholas,* 35 AD2d 18.)

Inasmuch as each defendant's conviction is of a crime charged in or under a duplicitous count the conviction cannot stand and those counts must be dismissed. "Combining violations of the same section * * * into one count clearly worked substantial prejudice" *(People v Murray,* 32 Misc 2d 757, 759) to the rights of the defendants. However leave is granted to resubmit the weapons charges to another Grand Jury.

Accordingly, the judgments of Supreme Court, Bronx County (EGGERT, J.), rendered December 17, 1976, convicting defendant Rosado of criminal possession of a weapon in the second degree, and defendant Rodriguez of criminal possession of a weapon in the third degree, should be unanimously reversed, on the law, and the indictment dismissed with leave to the People to resubmit the weapons charges to another Grand Jury.

MURPHY, P. J., LANE, MARKEWICH and LYNCH, JJ., concur.

Judgments, Supreme Court, Bronx County, each rendered on December 17, 1976, unanimously reversed, on the law, and the indictment dismissed with leave to the People to resubmit the weapons charges to another Grand Jury.