OPINION OF THE COURT
Simons, J.
Defendant was convicted after trial of first degree reckless endangerment and second degree criminal possession of a weapon. The Appellate Division modified, finding insufficient evidence to support the conviction for reckless endangerment but affirming the conviction for criminal possession of a weapon. On these cross appeals, the People maintain the reckless endangerment charge was sufficiently proven and defendant contends the count in the indictment charging him with criminal possession of a weapon should have been dismissed because it was duplicitous.
I
The People’s evidence established that at approximately 6:15 a.m. on the morning of August 1, 1982, defendant and another man confronted Ian Shillingford as he was returning home and demanded money from him, apparently to satisfy a debt. When Shillingford refused to pay them, a scuffle developed and defendant produced a pistol. He dropped it during the fight, however, and when the gun hit the ground it fired. Shillingford got away from the men and tried to run and hide but defendant found him and repeatedly struck him with the *35 weapon. Shillingford eventually was able to retreat to his apartment.
Police Officers Farley and Freeman were in the vicinity responding to another call when a bystander, who had witnessed the incident, pointed at defendant and shouted to the police, "that’s him”. Defendant ran and the police pursued him in their patrol car. When the car came within about 20 feet of defendant, he turned, assumed a "combat stance” and pointed the gun at the windshield of the police car. He pulled the trigger but the gun did not fire. Defendant then ran toward a nearby building with the police pursuing him on foot. As he ran he again pointed the pistol at the officers and, while he was doing so, Officer Farley shot and wounded him. When the officers recovered defendant’s gun they observed a spent shell in the chamber which had not been ejected when the gun was fired.
Defendant was charged with various offenses including first degree attempted robbery, two counts of first degree reckless endangerment and one count of second degree criminal possession of a weapon. At his bench trial he moved for dismissal of the count charging him with second degree possession of a weapon arguing that it was duplicitous because it was unclear whether the indictment charged him with possessing the weapon during his altercation with Shillingford or later during his confrontation with the police. The court denied the motion and convicted defendant of second degree possession of a weapon and of one count of reckless endangerment, first degree.
The Appellate Division modified the judgment by reversing the reckless endangerment conviction. One Justice dissented in part and voted to affirm. We now affirm.
II
To decide the People’s appeal we need only answer a narrow question: does pointing a gun at another and pulling the trigger constitute reckless endangerment when a jammed cartridge prevents the gun from firing? We conclude that such conduct does not, in the words of the statute, "create a grave risk of death to another.”
Reckless endangerment in the first degree is committed when a person, under circumstances evincing a depraved indifference to human life, recklessly creates a grave risk of death to another (Penal Law § 120.25). A person acts reck *36 lessly when he is aware of, but disregards, a substantial and unjustifiable risk to the degree that his behavior does not comport with the manner in which a reasonable person would have acted under the circumstances (Penal Law § 15.05 [3]). Reckless endangerment is the lowest of three levels of crimes prohibiting reckless conduct. The statutes defining it seek to prevent the risk created by the actor’s conduct, not a particular outcome. Thus, unlike reckless conduct which produces death (depraved mind murder; manslaughter) or physical injury (assault), no injury results from reckless endangerment. The risk of injury alone sustains prosecution.
Like higher crimes having recklessness as an element, reckless endangerment is not an intent crime. Instead, determining whether the crime was committed entails "an objective assessment of the degree of risk presented by defendant’s reckless conduct” (People v Register, 60 NY2d 270, 277, cert denied 466 US 953; see also, People v Poplis, 30 NY2d 85, 89; People v France, 57 AD2d 432, 435). Because the defendant’s subjective intent is irrelevant, prior versions of the statute were read as providing that reckless endangerment was only committed where the defendant’s indiscriminate conduct imperiled a group of persons, not where he targeted his actions toward a specific victim. It is now understood, however, that the crime may be committed even when the defendant’s actions are directed against a particular individual (see, People v Graham, 41 AD2d 226; see also, People v Poplis, supra).
Reckless endangerment frequently involves the use of firearms, but no case has been found which holds that the mere threatened use of a gun is sufficient to support a reckless endangerment conviction and there are decisions holding that it does not (see, e.g., People v Richardson, 97 AD2d 693, 694). The cases generally require that the weapon be fired, or at a minimum, capable of firing (see, People v Menard, 113 AD2d 972 [conviction upheld where slugs found in floor lVz feet from where complainant had been]; People v Schoonmaker, 103 AD2d 936 [firing gun at house known to be occupied where occupants’ location in dwelling is unknown constitutes reckless endangerment]; People v Graham, 41 AD2d 226, supra [defendant two feet from complainant guilty of reckless endangerment where he held gun eight inches from her and fired to the side of her head]). Moreover, even if a gun is fired, that standing alone, is not enough to constitute commission of the crime. The use of the gun must create a risk. Thus, it has been held that shooting a pistol into the air (People v Richard *37 son, 97 AD2d 693, supra) or in the general direction of a roadway but considerably short of it (People v Sallitto, 125 AD2d 345) does not constitute reckless endangerment. In this case, the evidence established that although defendant pulled the trigger his gun did not fire and thus his conduct could not create a risk of death to Officers Freeman and Farley.
The People contend that defendant was guilty of the type of perilous conduct that the reckless endangerment statute seeks to punish and, therefore, his conviction should be affirmed. They maintain that even though the evidence in the record established that defendant’s weapon was jammed and there was no evidence establishing that it was capable of firing when jammed, the crime was committed because the gun had been fired before and after the incident and was generally operable.* They ask, in effect, that the impossibility doctrine be invoked to hold defendant guilty of reckless endangerment because he tried to shoot the officers even though it was impossible for him to do so.
Legal or factual impossibility will not provide a defense to a prosecution for attempted intentional acts because the offense consists of deliberately performing a prohibited act and impossibility does not negate intent (see, Penal Law § 110.10; People v Deresky, 137 AD2d 704, lv denied 71 NY2d 1025). Reckless endangerment, however, is defined in terms of the risk produced by defendant’s conduct, not intent, and factual impossibility eliminates the risk essential to commission of the crime (see, People v Ramirez, 55 NY2d 708, 710; see also, People v Trepanier, 84 AD2d 374 [impossibility that defendant’s attempt to commit arson by hiring another would be successful where the person he hired was an undercover police officer required dismissal of count of indictment charging reckless endangerment]). Accordingly, the Appellate Division correctly dismissed the charge.
III
On the cross appeal, defendant contends that the count of the indictment charging him with second degree criminal possession of a weapon was duplicitous because it charged him *38 with two crimes: possessing the weapon in his confrontation with Shillingford and possessing it when he attempted to use it against the police. His premise is that second degree possession of a weapon is not a continuing crime (cf., People v Okafore, 72 NY2d 81 [decided today]). We conclude, however, that the indictment, as supplemented by the bill of particulars, only charged defendant with commission of second degree possession at the time of his confrontation with the police.
An indictment must provide the accused with fair notice of the charges against him so that he can defend himself and establish the defense of double jeopardy if an attempt is made to reprosecute him after acquittal or conviction of those charges (see, CPL 200.50; People v Keindl, 68 NY2d 410, 416, rearg denied 69 NY2d 823; People v Morris, 61 NY2d 290, 293; People v Iannone, 45 NY2d 589, 594). If a count charges more than one offense, it fails to meet these requirements and is void for duplicity (see, CPL 200.30 [1]; People v Keindl, supra, at 417; People v Klipfel, 160 NY 371; People v Rosado, 64 AD2d 172). The proscription against duplicitous counts also seeks to prevent the possibility that "individual jurors might vote to convict a defendant of that count on the basis of different offenses”, in effect, permitting a conviction even though a unanimous verdict was not reached (People v Keindl, supra, at 418; People v MacAfee, 76 AD2d 157, 159-160). However, dismissal is not automatic if the number of offenses charged by a particular count is uncertain because the precise time of the commission of the crime is not clearly stated. The defect may be cured by reference to a bill of particulars supplementing the indictment (see, People v Morris, supra, at 293-294; see also, People v Iannone, supra, at 597-598; People v Fitzgerald, 45 NY2d 574, 579-580, rearg denied 46 NY2d 837).
In this case the second count of the indictment charged that defendant committed second degree criminal possession of a weapon on August 1, 1982 when he possessed a semiautomatic pistol with the intent to use it unlawfully against another. Defendant’s demand for a bill of particulars asked only "[t]he exact time, date and place it is alleged that the defendant committed the crimes charged in the indictment.” The People responded that "the incident occurred on or about August 1, 1982 at approximately 7:10 a.m. in the vicinity of 8-10 27th Avenue, County of Queens.” This response satisfied defendant’s inquiry and pinpointed the moment of the charged crimes to the time defendant was alleged to have confronted *39 the police, not the time of his altercation with Shillingford almost an hour earlier. Thus, the second count of the indictment, as supplemented by the bill of particulars, charged defendant with a single offense and defendant’s motion to dismiss for duplicity was properly denied. We note also that because this was a bench trial there was no possibility that the verdict would not be unanimous and defense counsel could have reminded the court that the scope of the charge had been narrowed by the bill of particulars and thus ensure that the court consider only the evidence pertaining to defendant’s altercation with the police. Instead, he sought dismissal, relief to which he was not entitled.
Accordingly, the order of the Appellate Division should be affirmed

 The crime must be judged by the risk created at the time of the incident not, as the dissent does, by some speculation unsupported by evidence in the record that another "squeeze of the trigger”, "another jarring of the gun by the mere palm of a hand” could have subsequently brought death to the pursuing officers.