THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATHAN S. JOHNSON, Also Known as S. NATHAN JOHNSON, Appellant.

Third Department, July 9, 1992

APPEARANCES OF COUNSEL

*James A. Baker* for appellant.

*George M. Dentes, District Attorney,* for respondent.

**OPINION OF THE COURT**

YESAWICH JR., J.

On December 9, 1989 at approximately 5:30 A.M., police officers were dispatched to a residence in the City of Ithaca, Tompkins County, to investigate a complaint of domestic violence possibly involving a handgun. As they approached the premises, they heard a woman whose voice they recognized as that of Dorothy Phillips shouting at defendant not to shoot a gun in the house. When Phillips answered their knock at the door, she asked them to remove defendant from the house, warned that he had a gun and pointed to a bullet in the ceiling. The officers apprehended, searched and arrested defendant; they found no gun on his person. After Phillips was also arrested for threatening one of the officers with a butcher knife, she informed the officers that the gun was not in the apartment and enjoined her 14-year-old son, Terrell, not to tell them of the gun's whereabouts. Following removal of defendant and Phillips from the premises, Terrell—in response to requests by the police and the encouragement of his uncle, who also resided on the premises—led two officers to a gun hidden underneath a stuffed animal that was on top of a pile of clothes on the floor of an upstairs bedroom shared by defendant and Phillips.

Defendant was indicted and charged with criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and menacing. A suppression hearing was held after which County Court denied defendant's motion to suppress the gun—defendant maintained the gun was discovered during an illegal search—and also denied defendant's motion to dismiss the indictment as duplicitous.

During its deliberations, the jury sent a note to County Court asking that it furnish the jury with "a hard copy" of the court's charge. Over defendant's objection the court, acceding to that request, gave a written copy of its entire charge to the jury. Thereafter, the jury returned a verdict of not guilty on the charges of criminal possession of a weapon in the second degree and menacing, but guilty of criminal possession of a weapon in the third degree. An indeterminate prison term of 3 to 6 years was imposed. Defendant appeals.

■ County Court properly denied defendant's motion to dismiss the indictment as duplicitous (see, CPL 200.30). Penal Law § 10.00 (8) defines "possess" to include "physical possession or otherwise to exercise dominion or control over tangible property" (cf., People v Rosado, 64 AD2d 172, 177-178). Although, according to the People's bill of particulars, the second count of the indictment involved actual and constructive possession, only one offense was charged, namely, criminal possession of a weapon in the third degree, which occurred within a one-hour period in a single location (see, People v Heinzelman, 170 AD2d 841, 842, lv denied 77 NY2d 995; People v Hagmann, 160 AD2d 1125, 1127-1128; cf., People v MacAfee, 76 AD2d 157, 159-160).

■ The motion to suppress the handgun was also properly denied. It is undisputed that the search was conducted without a search warrant and without the express consent of any of the residents. And, having made no inquiry with respect to the authority of Phillips' brother or 14-year-old son to consent to the search of Phillips' bedroom, the police could not reasonably have believed that Phillips' brother or son had the requisite authority and control over the bedroom and personal property therein to consent to a search, however limited in scope (see, People v Adams, 53 NY2d 1, 9-10, cert denied 454 US 854; cf., People v Wood, 31 NY2d 975, 976). Notwithstanding the foregoing observations, the limited search to find the gun was justified by the exigent circumstances which then prevailed—including the report of gun fire, the bullet in the

ceiling, the 14-year-old's presence in the residence and his obvious knowledge of the gun's location *(see, People v Mitchell,* 39 NY2d 173, 177-178, *cert denied* 426 US 953; *People v Lenart,* 91 AD2d 132, 133-134).

■ Reversible error occurred however, when, over defendant's objection, County Court gave the jury a written copy of its charge *(cf., People v Groemminger,* 173 AD2d 983, *lv denied* 78 NY2d 966). In *People v Owens* (69 NY2d 585) the Court of Appeals, noting that "jury instructions generally are not fertile ground for innovation during trial, particularly when defendant objects" *(supra,* at 589), declared that reversible error occurs when a court, *sua sponte,* distributes written excerpts of its charge to the jury over the defendant's objection *(supra,* at 589-591). The Court of Appeals left open the question of whether providing the jury a copy of the full charge over the defendant's objection is permissible *(supra,* at 590, n).

We find it a telling contrast that the CPL, which undertakes to define materials that may be submitted to a jury, is silent respecting submission to a jury of the trial court's instructions in writing *(see, People v Sotomayer,* 173 AD2d 500, 502, *affd* 79 NY2d 1029). By CPL article 310 the Legislature has set forth the materials to which a jury may be permitted access to aid in its consideration of a case; they include trial exhibits (CPL 310.20 [1]), a written verdict sheet prepared by the trial court (CPL 310.20 [2]), and a copy of the text of a pertinent statute if both parties consent (CPL 310.30). Had it intended to empower the trial court to send or to allow a jury to have, where consent is lacking, a written copy of the court's instructions in the jury room, the Legislature would have so provided. To hold otherwise—even where, as here, the court made the charge available not *sua sponte* but at the jury's request and specifically cautioned the jury that everything contained in the charge is of equal importance and that the written copy furnished was not intended as a substitute for any question they might have regarding it—would increase the likelihood that juries would take on the role of Judges and attempt to interpret the substantive legal definitions and principles appearing in the charge rather than turn to the court for explanation or elucidation *(see, People v Moore,* 71 NY2d 684, 688). However slim this risk may appear, its potential, and hence the potential for depriving the accused of a fair trial, exists; therefore, the error occasioned by any such submission

to the jury cannot be viewed as innocuous *(see, People v Owens, supra,* at 591-592).

CASEY, J. (dissenting). Assuming that County Court erred in its submission of a written copy of the entire charge to the jury over defendant's objection, the error was harmless in this case. In *People v Owens* (69 NY2d 585), the Court of Appeals held that the submission of a written copy of portions of the charge was an error which was not subject to harmless error analysis. The court identified three dangers in such a submission: "First, the fact that the trial court has selected certain portions of its charge may itself convey the message that these are of particular importance. Second, the very repetition of parts of the charge may serve to emphasize them and subordinate the others. Finally, the written instructions may be reinforced by their physical presence in the jury room, as the oral instructions fade from memory" *(supra,* at 591). None of these dangers is present when the entire charge is provided to the jury. County Court did not directly or indirectly emphasize portions of the charge, while subordinating others; nor did the court convey any message that portions of the charge were of particular importance.

In *People v Moore* (71 NY2d 684), the Court of Appeals held that a Trial Judge's submission of copies of part of the indictment to the jury was subject to the harmless error analysis, if indeed it was error. In so doing, the court specifically noted that submission of part of the indictment "did not entail any of the risks identified in *Owens* because of the nature of the information and because the court was responding to a request from the jury" *(supra,* at 687). Here, too, the nature of the information and the fact that County Court responded to a request from the jury precludes any of the risks identified in *People v Owens (supra).* The Court of Appeals in *People v Moore (supra)* also distinguished cases involving the submission of a statute to the jury without the defendant's consent, which held the harmless error analysis inapplicable *(see, People v Nimmons,* 72 NY2d 830; *People v Sanders,* 70 NY2d 837). In so doing, the court explained: "When jurors consider a statute in isolation, apart from related statutes, the legislative history and judicial interpretation, they may very well engage in a collateral debate as to its meaning, thereby taking on the role as Judges of the law as well as Judges of the fact. No such danger exists when an indictment is given to the jury, for the law presumes that the

jury will follow the court's instructions that the indictment is not evidence and is only an accusatory instrument" *(People v Moore, supra,* at 688).

Upon submission of a copy of the entire charge to the jury in this case, County Court instructed the jury as follows: "Now I caution you that my giving you this is not intended as a substitute for any question that you may have about this. If there is anything in my instructions that you do not understand please ask for further clarification. This is offered to you and given to you so that you will know exactly what it was that I did say to you." Because the law presumes that the jury will follow the court's instructions *(People v Moore, supra,* at 688), there is no basis for the majority's concern that submission of the entire charge increased the likelihood that this jury assumed the role of Judge of the law as well as Judge of the facts, rather than turn to the court for explanation or elucidation. Submission of a written copy of the entire charge, upon the jury's request and with proper instructions, entails none of the risks identified in the cases which have held the harmless error analysis inapplicable to erroneous submissions to the jury *(see, People v Taylor,* 76 NY2d 873; *People v Nimmons, supra; People v Sanders, supra; People v Brooks,* 70 NY2d 896; *People v Owens, supra).* As in *People v Moore (supra),* the absence of these risks permits application of the harmless error test and, in the circumstances of this case, County Court's error in submitting the entire charge, if indeed it was error, was harmless.

MIKOLL, J. P., MERCURE and CREW III, JJ., concur with YESAWICH JR., J.; CASEY, J., dissents in a separate opinion.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Tompkins County for a new trial.