Adrian L. BALL & Christopher
J. Jackson, Appellants,

v.

UNITED STATES, Appellee.

Nos. 10–CF–582, 10–CM–639.

District of Columbia Court of Appeals.

Argued May 17, 2011.
Decided Aug. 25, 2011.

Julian S. Greenspun, for appellant Ball.

Raymond J. Rigat, Clinton, CT, for appellant Jackson.

Amanda J. Winchester, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, John P. Mannarino, and Adam J. Schwartz, Assistant United

States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, OBERLY, Associate Judge, and KING, Senior Judge.

WASHINGTON, Chief Judge:

Appellants Adrian Ball and Christopher Jackson seek reversal of their convictions stemming from their involvement in a high-speed chase and subsequent foot pursuit by police. Jackson raises only one issue on appeal, challenging the government's joinder of his charges with those of his co-appellant, Ball. Ball, in turn, raises three issues, challenging (1) the sufficiency of the evidence of his conviction for felony assault of a police officer; (2) his separate sentencing for possession of a firearm during a crime of violence; and (3) the trial court's failure to respond to allegedly improper comments made by the prosecutor in closing. We affirm all of Jackson's convictions and most of Ball's convictions, but we remand Ball's case to the trial court for further proceedings consistent with this opinion.

I.

On December 16, 2009, Ball and Jackson were each indicted on numerous charges. Because Ball's offenses involved a gun, his charges are more serious: assault with a dangerous weapon ("ADW"); [1] assaulting, resisting, or interfering with a police officer while armed ("felony APO"); [2] two counts of possession of a firearm during a crime of violence ("PFCV"); [3] unlawful possession of a firearm by a convicted felon; [4] carrying a pistol without a license ("CPWL"); [5] possession of an unregistered firearm; [6] and unlawful possession of ammunition. [7] Jackson, who was unarmed at all times, was indicted on charges of: fleeing a law enforcement officer; [8] assaulting, resisting, or interfering with a police officer ("misdemeanor APO"); [9] and reckless driving. [10] The appellants were tried together during a three-day jury trial after which the jury convicted them on all counts.

The government introduced evidence that at around 3:00 a.m. on September 7, 2009, Metropolitan Police Sergeant Michael Lynch was sitting in his cruiser in Northeast when he observed a white Buick traveling at a high rate of speed. When he began to follow the Buick, it sped up as if to get away, and Lynch placed a call over his police radio to other officers, alerting them to the situation. Two more police cruisers then joined the chase: one containing Officers Thomas O'Donnell and Barry Gomez, and the other containing Officers Christopher Woody and Gregory Shiffer. Ultimately, the Buick blew a tire and came to a "dramatic[ ]" stop, after which three men exited the Buick and fled on foot.

Woody and Shiffer saw Jackson flee from the driver's seat, and Woody was able to tackle Jackson after chasing him for about forty or fifty yards. Jackson did not go down without a fight, and instead

1. D.C.Code § 22–402 (2001).

2. Id. §§ 22–405(c), –4502.

3. Id. § 22–4504(b).

4. Id. § 22–4503(a)(2).

5. Id. § 22–4504(a)(2).

6. Id. § 7–2502.01.

7. Id. § 7–2506.01(3).

8. Id. § 50–2201.05b (b)(2).

9. Id. § 22–405(b).

10. Id. § 50–2201.04.

flailed at, elbowed, and punched Woody while trying to break free. Once Shiffer arrived, he and Woody were able to subdue Jackson.

Officers Gomez and O'Donnell arrived and saw someone exit the Buick from the rear door on the passenger's side with a gun, and O'Donnell pursued him, calling out that he had seen a gun. Gomez, hearing O'Donnell's alert, unholstered his weapon and saw two more individuals flee the Buick, one of whom was Ball. Gomez testified that when Ball got out of the Buick, he was carrying an "extremely large" handgun. Gomez chased after Ball at a "dead sprint," telling him numerous times to stop and to drop the gun. After the final warning, Ball turned his "upper torso" toward Gomez and pointed the gun in Gomez's direction, prompting Gomez to fire his own weapon once at Ball. After approximately a second, since Ball was still pointing the gun in Gomez's direction, Gomez fired again. Neither bullet struck Ball, but Ball then stumbled and tossed his gun off to the side. The chase continued into an alleyway, where Ball fell and Gomez was able to apprehend him.

■ After Gomez indicated to other officers the location where Ball had discarded his gun, Officer Ridley Durham recovered a Ruger 9mm loaded with 19 rounds of ammunition. When Durham removed the magazine from the gun, he saw that the weapon was jammed. A government expert testified that the gun was in normal working condition and would have fired but for the jammed magazine; he also stated that had a bullet been in the chamber, it would have fired. Four days after the incident, police searched Ball's home and recovered ammunition that was compatible with the Ruger, some of which was identical to the type found in the gun.

## II.

■ Jackson's sole argument on appeal is that the trial court erred by denying his motion for relief from misjoinder and his motion for reconsideration of that denial. "Misjoinder ... is an error of law," and thus we "subject[ ] the trial court's [joinder] decision to *de novo* review." *Ray v. United States*, 472 A.2d 854, 857 (D.C. 1984). Because all of Jackson's and Ball's crimes were logically related, we affirm Jackson's conviction.

■ Joinder of defendants is governed by Super. Ct.Crim. R. 8(b), which states that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Multiple offenses constitute such a "series of acts or transactions" where "one offense logically leads to another...." *Byrd v. United States*, 551 A.2d 96, 99 (D.C.1988) (citing *Davis v. United States*, 367 A.2d 1254, 1262 (D.C.1976) (citations omitted)).[11] In other words, where there exists "a logical connection between the two offenses, and if one is shown to be a 'sequel' to the other, then joinder is proper." *Sams v. United States*, 721 A.2d 945, 954 (D.C. 1998) (citing *Bush v. United States*, 516 A.2d 186, 192 (D.C.1986)). We employ a "strong policy favoring joinder" because it "expedites the administration of justice" in numerous ways. *See Sousa v. United*

11. Multiple offenses are also properly joined where "the offenses are committed to achieve a specific common end" or where "the offenses are part of a common scheme or plan, and are so closely connected in time or place that there is necessarily a substantial overlap in proof of the various crimes and it would be difficult to separate proof of one from the other." *Id.*

*States,* 400 A.2d 1036, 1040 (D.C.1979) (citation omitted).

In the instant case, joinder was appropriate because all of Jackson's and Ball's offenses constituted a logically connected series of transactions. All of the assault offenses were "sequels" to Jackson's initial reckless driving charge. The incidents occurred within a span of mere minutes, from the inception of the high-speed chase to the ultimate apprehension of the Buick's occupants. Once the Buick's tire had blown, the occupants were logically forced to flee by foot, and when the officers closed in on them, the next logical step in evasion was to resist arrest. Moreover, much of the evidence of the various offenses would substantially overlap. The same officers' testimony was necessary to prove most of the offenses, since all of the officers became involved in the incident when they were called to respond to the speeding Buick. It would be particularly difficult to separate the evidence of Ball's weapon-based offenses from Jackson's reckless driving charge because a jury would clearly need to know why Gomez was sprinting after Ball, with his gun drawn, at the time Ball pointed his weapon at Gomez.

We are further convinced that joinder was appropriate under the circumstances of this case because it is in stark contrast to other cases in which we have held joinder to be inappropriate. *See, e.g., Jackson v. United States,* 623 A.2d 571, 579–80 (D.C.1993) (citation omitted) (joinder erroneous where appellants robbed two liquor stores on different dates, in isolated events, involving different victims and witnesses); *Settles v. United States,* 522 A.2d 348, 353 (D.C.1987) (joinder erroneous where two appellants assaulted two separate victims in incidents separated by a ten-day span and involving different witnesses). Thus, we affirm the trial court's

denials of Jackson's motion for relief from misjoinder and his motion to reconsider that ruling, and since this is Jackson's only argument on appeal, we affirm all of his convictions.

### III.

■ Ball's primary argument on appeal is that the evidence was insufficient to convict him of felony APO and that, instead, it was only sufficient to convict him of the lesser charge of misdemeanor APO. We disagree.

■ Upon review of a challenge to the sufficiency of evidence, we "view[ ] the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Gibson v. United States,* 792 A.2d 1059, 1065 (D.C.2002) (citation omitted). In order to defeat the appellant's challenge, the government must only "adduce at least some probative evidence on each of the essential elements of the crime." *Jennings v. United States,* 431 A.2d 552, 555 (D.C.1981) (citation omitted). "It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may properly take the case from the jury." *Gibson, supra,* 792 A.2d at 1065 (citation omitted).

The District of Columbia Code criminalizes assaulting a police officer at §§ 22–405(b), (c) (2001), which state that:

(b) Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor. . . .

(c) A person who violates subsection (b) of this section and causes significant bodily injury to the law enforcement officer, or commits a violent act that *creates a grave risk of causing significant bodily injury to the officer*, shall be guilty of a felony....

(Emphasis added).

On appeal, Ball does not dispute that he pointed the loaded Ruger toward Officer Gomez while the two were sprinting. Instead, he asserts that because the gun was jammed at the time he did so, he never created a grave risk of causing significant bodily injury to Officer Gomez, and therefore he was not guilty of *felony* APO. Viewing the evidence in the light most favorable to the government, as we must, we find his argument unavailing. Ball's action of pointing a loaded gun—an object we have described as an "inherently dangerous weapon," *Paris v. United States*, 515 A.2d 199, 204 (D.C.1986)[12]—in the direction of a police officer clearly created a grave risk of causing significant bodily injury to that officer. The evidence does not indicate whether Ball pulled the trigger at that time, and the jury was free to infer that the gun only jammed later when Ball threw it to the ground. In such a situation, Ball's actions would have come treacherously close to inflicting significant bodily injury, or even death, upon Officer Gomez. Moreover, a government expert

testified that the gun, when recovered by police, was still in "normal operating condition" and would "fire as it's designed to fire." The expert also indicated that, even when the Ruger was jammed in the manner that it was jammed when found by police, if there were a round in the chamber at the time, the gun would still fire.[13] In light of this evidence, we are satisfied that when Ball pointed the loaded Ruger at Officer Gomez, the jury could reasonably find that he created a grave risk of significant bodily injury to Gomez.

We disagree with the reasoning of the majority opinion of the Court of Appeals of New York in *People v. Davis*, 72 N.Y.2d 32, 530 N.Y.S.2d 529, 526 N.E.2d 20 (1988), the authority upon which Ball primarily relies to challenge his conviction. In *Davis*, the defendant crouched, aimed a gun at two police officers in a police cruiser, and pulled the trigger, but the gun did not fire; based upon these actions, he was convicted of reckless endangerment under a statute that closely mirrors our felony APO statute.[14] In a 4–to–3 opinion, the majority reversed the defendant's conviction, holding that "although [he] pulled the trigger his gun did not fire[,] and thus his conduct could not create a risk of death to" the officers. *Id.*, 530 N.Y.S.2d 529, 526 N.E.2d at 22. In other words, the majority held that it was "factual[ly] impossib[le]" for the defendant's actions to cre-

---

**12.** *See also McLaughlin v. United States*, 476 U.S. 16, 17, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986) ("[A] gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place.").

**13.** The expert testified extensively as to the operability of the ammunition cartridges in the magazine of the semiautomatic Ruger pistol found in this case. The "jamming" here occurred when one of the cartridges in the

magazine was loaded improperly and would not slide into the chamber of the gun correctly; however, had a preceding cartridge from that magazine already entered the chamber, according to the expert, the Ruger would have fired that cartridge.

**14.** Under the relevant portion of the New York statute in effect at the time, a person was guilty of reckless endangerment when he "recklessly engage[d] in conduct which create[d] a grave risk of death to another person." N.Y. Penal Law § 120.25 (1965).

ate such a risk, and therefore that factual impossibility "eliminat[ed] the risk essential to commission of" the crime under the New York statute. *Id.*, 530 N.Y.S.2d 529, 526 N.E.2d at 22; *see People v. Chrysler,* 85 N.Y.2d 413, 626 N.Y.S.2d 18, 649 N.E.2d 1162, 1164 (1995).[15]

We are disinclined to adopt this position, which, in our view, relies too heavily upon the fortuity of the temporary inoperability of a loaded weapon aimed at a police officer. Instead, we are persuaded by the dissenting opinion in *Davis,* which would have upheld the defendant's conviction even though his gun did not fire:

> Even if "operability" and "grave risk of death" were synonymous, and even if they are to be gauged by a flash-frozen moment in eternity, which is probably too inflexible an approach, still in this case the People's direct and circumstantial evidence on grave risk of death is enough beyond a reasonable doubt.... The grave risk of death was unquestionably present and proven because another squeeze of the trigger, another jarring of the gun by the mere palm of a hand to dislodge the [jam], or any among many other intended or fortuitous instantaneous actions, could have brought death to the pursuing officers. The grave risk of death was present throughout, and the mere fact that one firing failed does not evaporate the risk intended to be punished by the statute.

530 N.Y.S.2d 529, 526 N.E.2d at 24–25 (Bellacosa, J., concurring in part and dissenting in part). To us, this reasoning more aptly characterizes the situation before us, in which, even assuming Ball's gun was jammed at the time that he aimed it at Gomez, any sudden jostling during his "dead sprint" away from Gomez could have dislodged the temporary jam in his gun or even caused his finger to pull the trigger. Under such circumstances, a grave risk of significant bodily injury to Gomez was unquestionably present.[16]

**15.** Because we reject the *Davis* majority's reasoning, we need not address here whether the defense of impossibility is a viable one in this jurisdiction. *Cf. Butler v. United States,* 481 A.2d 431, 450 (D.C.1984) (Pryor, J., concurring in part and dissenting in part) (citations omitted) ("The current jurisprudential trend is to eliminate the defense of impossibility."). Moreover, even if it were a viable defense, the evidence presented in the instant case, as opposed to that in *Davis,* does not necessarily establish impossibility. Here, the evidence only indicates that the gun was jammed at the time it was recovered by police, minutes after Ball threw it to the ground during the chase. The evidence does *not* establish that the gun was inoperable at the time Ball pointed it at Gomez; in fact, the ballistics expert testified that the gun was in "normal operating condition" at the time he examined it. Thus, it is feasible that the gun did not become jammed until it hit the ground. Nevertheless, because we reject the *Davis* majority's reasoning and espouse the dissent's, we need not grapple with these issues today.

**16.** A comparison between our own statutes criminalizing felony APO and aggravated assault further convinces us that, under the specific language of our own felony APO statute, the reasoning of the dissent in *Davis* should prevail here. In the District of Columbia, one commits aggravated assault if, *inter alia,* he "engages in conduct which creates a grave risk of serious bodily injury to another person, *and thereby causes serious bodily injury.*" D.C.Code § 22–404.01 (2001) (emphasis added). In contrast, the felony APO statute, which was enacted in 2007—well after the enactment of the aggravated assault statute—contains no such corollary requiring a defendant to actually inflict injury. *See id.* § 22–405(c). It is thus clear that the legislature intended for the crime of felony APO to encompass a broader range of activity, most importantly the creation of a grave risk of significant bodily injury to an officer even in the absence of an ultimate infliction of such injury. Because our legislature was fully aware of this distinction and chose not to include language requiring the actual infliction of injury when enacting the felony APO

Our confidence in our conclusion today is bolstered by the Seventh Circuit's opinion in *United States v. Easter*, 553 F.3d 519 (7th Cir.2009). In that case, the defendant fled from a police officer and began to draw a gun from his pants but dropped it before firing. The *Easter* court upheld an enhancement to his sentence, holding that "simply reaching for a loaded gun is enough to create a substantial risk of serious bodily injury to another person" and that such a risk "is even greater where, as here, the person handling the gun is also running at full speed." *Id.* at 524 (citations omitted). Under such starkly parallel facts, we are confident that Ball's actions were analogously sufficient to permit the jury to convict him of felony APO, and we affirm that conviction.

## IV.

Ball next argues that under the facts of this case, certain of his convictions should merge. The government concedes that in light of our affirmance of Ball's felony APO conviction, his conviction for ADW should merge with that conviction. We agree with this concession. Additionally, since Ball was convicted on two counts of PFCV—one in correlation to the felony APO conviction, and the other in correlation to the ADW conviction—one of his PFCV convictions should be vacated as a result of the merger of the two predicate offenses. We therefore remand Ball's convictions to the trial court for further proceedings consistent with this merger.

■ Even once Ball's felony APO and ADW convictions have merged, however,

Ball maintains that he cannot be convicted of both PFCV and felony APO under the circumstances of this case, where both of those counts arise as a result of the single action of holding a gun.[17] We are similarly unpersuaded by this argument.

Following Supreme Court precedent, this court has consistently held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Hanna v. United States*, 666 A.2d 845, 853 (D.C.1995). Applying this test to the offenses of felony APO and PFCV, we are satisfied that the offenses do not merge. To prove a defendant guilty of felony APO, the government must show, among other things, that the defendant knew or should have known that the victim was a police officer. *See In re J.S.*, 19 A.3d 328, 330 (D.C.2011) (citation omitted). It is not necessary that the defendant use a firearm to be guilty of felony APO. However, to be convicted of PFCV, a defendant must commit a crime of violence while "possess[ing] a pistol ... or any other firearm...." D.C.Code § 22–4504(b). Thus, the crimes of felony APO and PFCV each require proof of an element that the other does not and are therefore considered separate offenses under the *Blockburger* test. *See Blockburger, supra*, 284 U.S. at 304, 52 S.Ct. 180; *Stevenson v. United States*, 760 A.2d 1034, 1035 n. 2

statute, the absence of such language further persuades us to follow the dissenting opinion in *Davis* when applying our statute.

17. Ball originally argued, under the same reasoning, that the two PFCV convictions (corresponding to felony APO and ADW, respectively) could not stand. Because we hold that the

felony APO and ADW convictions should merge, and that one of the PFCV convictions should consequently be vacated, we need only address this argument as it relates to the concurrence of the felony APO conviction and its single corresponding PFCV conviction.

(D.C.2000) (holding it to be "clear … that the convictions for PFCV do not merge into the predicate armed offenses …"). Thus, we are confident that the trial court did not err in convicting Ball of both felony APO and PFCV.

## V.

■ Ball's final argument is that the prosecutor made improper comments during his closing argument and that the trial court plainly erred by failing to intervene. We find no merit in this argument.

■ "[T]he government has the right during closing argument to comment on the evidence and to draw reasonable inferences from it." *Dixon v. United States,* 565 A.2d 72, 80 (D.C.1989) (citation omitted); *Irby v. United States,* 464 A.2d 136, 140 (D.C.1983). In contrast, "[i]t is improper for an attorney to make an argument to the jury based on facts not in evidence or not reasonably inferable from the evidence." *Russell v. United States,* 701 A.2d 1093, 1099 (D.C.1997) (citation omitted). Where, as here, the appellant did not object to the allegedly improper comments below, we apply the "stringent" plain error standard to determine if the trial court's failure to cure the allegedly improper comments was "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991) (citation omitted). As we noted in *Dixon, supra,* the Supreme Court has "cautioned that reversal for plain error in cases of alleged prosecutorial misconduct should be confined to 'particularly egregious' situations." 565 A.2d at 75 (citing *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

In the instant case, the trial court faced no such egregious situation. Ball assigns error to the prosecutor's statement that Ball knew, when he pointed the gun at

Gomez, that he was "in a lot of trouble and [had] little to lose at that point by trying to use the gun to get out of trouble." This is a reasonable inference drawn from the evidence that Ball was in a car that led police on a high-speed chase, after which he bailed out of the car and fled from police on foot while visibly carrying a gun. Based upon this evidence, the prosecutor was entitled to propose to the jury, in his closing argument, that Ball was aware that he was in legal trouble. We thus find no error, and certainly no plain error, in the trial court's failure to intervene *sua sponte* in response to the prosecutor's statements, and we reject Ball's argument on this issue.

## VI.

For the foregoing reasons, we affirm appellant Jackson's convictions. We also affirm all of Ball's convictions except for the ADW conviction and its single corresponding PFCV conviction, which should be vacated in light of the merger of the ADW and felony APO convictions. We therefore remand Ball's case to the trial court for further proceedings consistent with this opinion.

*So ordered.*